UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

Case # 1:04-CV-12300-EFH

| | |
|---|---|
| MICRO SIGNAL RESEARCH, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| NURI OTUS and MAUREEN CUNNINGHAM, | ) |
| Defendants, | ) |
| and | ) |
| CUPERTINO NATIONAL BANK & TRUST, | ) |
| Trustee Defendant. | ) |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDER, TRUSTEE PROCESS ATTACHMENT, AND REAL ESTATE ATTACHMENT

Defendants Nuri Otus ("Mr. Otus") and Maureen Cunningham ("Ms. Cunningham") hereby oppose the motions of Micro Signal Research, Inc. ("MSR") for temporary restraining order, trustee process attachment and real estate attachment (hereinafter collectively "MSR's Motions"). MSR's Motions must be denied because: (i) MSR cannot demonstrate likelihood of success on the merits; (ii) MSR has failed to show irreparable harm; and (iii) the Court lacks jurisdiction to attach assets located outside of the judicial district. In support, defendants rely upon the Affidavit of Nuri Otus (the "Otus Aff.").

I.   Facts

AuctioNet.com, Inc. ("AuctioNet") was incorporated in California in August, 1999. ActioNet's Articles of Incorporation were amended and restated on July 20, 2000 in connection with the company's efforts to obtain financing. While Mr. Otus and Ms. Cunningham were shareholders of AuctioNet, they did not exercise pervasive control over the affairs of the company. Rather, corporate activities were overseen and managed by an active board of directors. Otus Aff., ¶¶ 1 - 4.

AuctioNet built and maintained a business to consumer website, similar to E-bay, that specialized in the sale and resale of high technology equipment. In or about July, 2001, AuctioNet merged into Realm Connect Corporation ("Realm"). Realm's business activities focused on the creation and application of web-based technology, utilized by popular web sites such as AOL, to buy and sell products online. After the merger, Realm continued the activities of AuctioNet under its corporate umbrella. Otus Aff., ¶¶ 5 - 6.

The total number of issued and outstanding shares of Realm, as of June 30, 2001, exceeded 16,000,000, of which Mr. Otus and Ms. Cunningham together held 7,500,000, or approximately forty-four percent (44%). Notwithstanding their significant equity interest, Mr. Otus and Ms. Cunningham did not exercise pervasive control over the affairs of Realm which, again, were overseen and managed by an active board of directors. Otus Aff., ¶¶ 7-8.

Realm, d/b/a/ AuctioNet consistently maintained corporate formalities, held frequent board meetings, and strictly segregated corporate operations from the financial affairs of the shareholders. In or about August, 2004, having failed to successfully market its products and services for several quarters, and having failed to attract sufficient equity investment to continue operations, Realm ceased to do business. Otus Aff., ¶¶ 9 - 10.

The alleged agreement at issue in this case was not between plaintiff and Mr. Otus or Ms. Cunningham, but rather with Realm, d/b/a AuctioNet. All of the email communications which plaintiff contends establish the contractual relationship are from Mr. Otus <u>in his explicit capacity as CEO of AuctioNet</u>. Finally, Cupertino National Bank & Trust, the bank to which plaintiff alleges it wire transferred funds in connection with the transaction, maintained the account in the name of "Realm Connect Corporation d/b/a AuctioNet.com." Otus Aff., ¶¶ 11 - 12. Plaintiff knew, or reasonably should have known throughout the transaction, that it was dealing with a corporate entity, not an individual.

In or about July, 2004, Mr. Otus became engaged as an independent contractor by Asset Management Associates Group, Ltd., an entity organized under the laws of the State of Delaware, with a principal place of business located at 840 Burlway Road, Burlingame, California ("AMA"). Although Ms. Cunningham holds shares in the company, Mr. Otus is neither an officer, director, nor shareholder. In October, 2004, AMA conducted an auction of

3

equipment owned by BeamReach Networks, and located in Santa Clara, California. Although it will earn a commission in connection with its role as auctioneer, AMA is contractually obligated to disburse the funds generated by that auction to BeamReach Networks. Otus Aff., ¶¶ 13 - 14.

## II. Argument

### A. Mr. Otus and Ms. Cunningham are not personally liable for the debts of AuctioNet.com

As set forth in the Otus Affidavit, and confirmed by email correspondence appended to the Affidavit of Mr. Epstein, plaintiff's alleged agreement was with a corporate entity, not the named individual defendants. Moreover, plaintiff fails to allege any acts or omissions which might give rise to personal liability. Under Massachusetts law, a "corporation is an independent legal entity, separate and distinct from its shareholders, officers, and employees." Spaneas v. Travelers Indemnity Co., 423 Mass. 352, 354 (1996). Accordingly, a "corporate officer ordinarily is not liable for the corporation's breach of contract." Union Mutual Life Insurance Co. v. Chrysler Corp., 793 F. 2d 1, 11(1st Cir. 1986) (applying Massachusetts law).

Similarly, "[t]he ownership of . . . stock and . . . control of the affairs of a corporation do not make that corporation and the individual owner identical, in the absence of a fraudulent purpose in the organization of the corporation." M. McDonough Corp. v. Connolly, 313 Mass. 62, 65-66 (1943). See also, Searcy v. Paul, 20 Mass. App. Ct. 134, 139 (1985)(no basis to disregard corporate fiction absent either "flagrant disregard for corporate

4

barriers" or fraud).

Plaintiff simply ignores the existence of AuctioNet, and fails to allege any specific acts or omissions by Mr. Otus or Ms. Cunningham which, under Massachusetts law, might warrant piercing the veil. <u>Evans v. Multicon Construction Corp.</u>, 30 Mass. App. Ct. 728, 733 (1999)(twelve part standard required to pierce the corporate veil); <u>See</u> <u>also</u> <u>My Bread Baking Co. v. Cumberland Farms</u>, 353 Mass. 614, 620 (1968).

This case involves a failed business venture where sums were advanced by plaintiff and not repaid by a corporate entity. While one of the individual defendants desires to make plaintiff whole, the expression of such sentiments were motivated by a sense of moral duty, rather than by an enforceable obligation. Thus, plaintiff has failed to demonstrate a likelihood of success on the merits for claims directed against Mr. Otus and Ms. Cunningham. Since such showing is a requisite element for the granting of both injunctive relief[1] and prejudgment attachment security,[2] MSR's Motions must be denied.

B. <u>The Court lacks jurisdiction to grant attachments against defendants' California property</u>

The Court is empowered to grant prejudgment security, but only "under the circumstances and in the manner provided by the law of the state in which the district court is held . . .". Fed. R. Civ. P. Rule 64.

---

[1] Fed. R. Civ. P. 65.
[2] Mass. R. Civ. P. Rule 4.1(c), and 4.2(c)

1.   <u>The trustee process defendant is not subject to jurisdiction</u>

General Laws, c. 246, § 1 in part provides: "All personal actions . . . [with immaterial exceptions] may be commenced by trustee process and any person may be summoned as trustee of the defendant therein . . . . An individual who is not an inhabitant of the Commonwealth, or a foreign corporation or association, shall not be so summoned unless he or it has a usual place of business in the Commonwealth." Plaintiff does not allege that trustee defendant Cupertino National Bank has a usual place of business in the Commonwealth. Complaint, ¶ 4. Instead, as appears from the Cupertino National Bank's website, the purported trustee defendant conducts business only in California, and maintains just six branch offices, all within the greater San Francisco area. Otus Aff., ¶ 15. Thus, the Court may not enter an order attaching by trustee process the assets of Mr. Otus and Ms. Cunningham, if any, in the possession of Cupertino National Bank. <u>See, e.g.</u> <u>Wyshak v. Anaconda Copper Mining Company</u>, 328 Mass. 219, 222-223 (1952).

2.   <u>A writ of attachment issued in Massachusetts is ineffective against California realty</u>

Defendants own no real estate in Massachusetts, Otus Aff., ¶ 16, and the Court lacks jurisdiction to order the attachment of real property located in California. A District Court may issue pre-judgment remedies only as may be consistent with state law. General Laws, Chapter 223, § 20 provides that process, and therefore writs of attachment, "may run, and shall be executed and obeyed throughout the Commonwealth." Mass. R. Civ. P. Rule 4.1,

6

Reporter's Notes, third paragraph (1973). Therefore, a writ of attachment issued in Massachusetts will have no force or effect in California.

### C. Plaintiff demonstrates none of the requirements for injunctive relief

The law in the First Circuit governing the grant of injunctive relief is well settled: a movant must establish that: (i) plaintiff has exhibited a likelihood of success on the merits; (ii) plaintiff will suffer irreparable injury if the injunction is not granted; (iii) such injury outweighs any harm that granting injunctive relief would inflict on the defendants; and (iv) the public interest will not be adversely affected by the granting of the injunction. Planned Parenthood League of Mass. v. Bellotti, 641 F. 2d 1006, 1009 (1st Cir. 1981). See also, Keds Corp. v. Renee Int'l Trading Corp., 888 F. 2d 215, 220 (1st Cir. 1989).

Plaintiff asks the Court to enjoin "defendants from failing to pay over to MSR and/or this Court all funds (up to $210,000.00) they are presently earning from their new business entity, including any funds received in the auction they were advertising on October 24, 2004." MSR's Motions, Prayer (2). The request suffers numerous procedural and substantive defects.

### 1. AMA is neither a named defendant nor liable for the debts of AuctioNet

The Complaint fails to name AMA (the assumed "new business entity") as a defendant. Although Mr. Otus is an independent contractor of AMA, the company is organized under the laws of Delaware, does not conduct any business in

7

Massachusetts, and no showing has been made that AMA is subject to the jurisdiction of this Court. Otus Aff., ¶ 13.

Even if AMA were a defendant, plaintiff has neglected to allege facts sufficient to enjoin defendants' participation in the new business venture. Rather, plaintiff thinly alleges only that:

> The Court should note that on "Craigs list" Mr. Otus has an advertisement in which he states that he will purchase equipment from prospective sellers. <u>The email states that he will pay cash for equipment. This indicates there may be an ownership interest by Mr. Otus in the equipment he proposes to auction on October 28, 2004.  This also indicates that he is purchasing new equipment with MSR's money rather than paying MSR.</u>

Complaint, ¶ 46 (emphasis supplied).

In Massachusetts, the liabilities of a predecessor corporation are not imposed on a successor corporation, unless the successor assumes the liabilities, the transaction is de facto merger or consolidation, the successor is mere continuation of predecessor, or the transaction is a fraudulent effort to avoid the liabilities of predecessor." <u>Cardgill, Inc. v. Beaver Cole & Oil Co., Inc.</u>, 424 Mass. 356 (1997). Plaintiff does not allege that AMA is a successor to the liabilities of Realm or AuctioNet, but rather, speculates that defendants are using MSR's money to purchase goods under the name of AMA, an allegation that defendants specifically deny. Otus Aff., ¶ 17.

### 2. Plaintiff fails to demonstrate any irreparable harm

Preliminary injunctions are considered to be extraordinary remedies, a "drastic" form of relief, GA Enterprises, Inc. v. Leisure Living Communities, Inc., 355 F. Supp. 947 (D. Mass. 1973), and the "threat of injury must be real, not fancied, actual, not prospective threatened or imagined." Weeks v. Alpert, 131 F. Supp. 608 (D. Mass. 1955). Irreparable injury is absent where plaintiff has an adequate remedy at law. Ainslie Corp. v. Middendorf, 381 F. Supp. 305 (D. Mass. 1974).

In this case, plaintiff is clearly made whole by money. While the fact that AuctioNet has ceased operations may render such recovery less than certain, it does not outweigh the balance of harm to defendants were they to be enjoined in the absence of any articulated basis for personal liability. Planned Parenthood League of Mass. v. Bellotti, 641 F. 2d at 1009 (third prong of four prong injunction test balances irreparable injury against harm to non-moving party).

### III. Conclusion

For the foregoing reasons, defendants Nuri Otus and Maureen Cunningham, respectfully request that the Court deny MSR's Motions.

NURI OTUS and MAUREEN CUNNINGHAM,
By their attorneys,

_/s/ Michael C. Fee_

FEE, ROSSE & LANZ, P.C.
Michael C. Fee (BBO #552796)
Sabrina K. Lanz (BBO #567392)
321 Boston Post Rd.
Sudbury, MA 01776
T: (978) 440-7000
F: (978) 440-7650
www.feelaw.com

Dated: November 4, 2004


CERTIFICATE OF SERVICE

I, Michael C. Fee, hereby certify that a true copy of the foregoing document was served upon all counsel of record, by hand delivery directed to Timothy J. Perry, Esq., Perry, Krumsiek & Wayland, P.A., Suite 200, 114 State Street, Boston, MA 02109 this 4th day of November, 2004.

_/s/ Michael C. Fee_
Michael C. Fee