UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

Case # 1:04-CV-12300-EFH

| | |
|---|---|
| MICRO SIGNAL RESEARCH, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| NURI OTUS and MAUREEN CUNNINGHAM, | ) |
| Defendants, | ) |
| and | ) |
| CUPERTINO NATIONAL BANK & TRUST, | ) |
| Trustee Defendant. | ) |

<u>DEFENDANTS' MOTION TO STAY LITIGATION AND INJUNCTION ORDER PENDING APPEAL</u>

Pursuant to Fed. R. Civ. P. 8(a), defendants move that this Court stay the above-referenced litigation, including the grant of injunctive relief, pending the outcome of defendants' appeal of this Court's Order dated November 4, 2004 (the "Order") granting Plaintiff's Motion for Temporary Restraining Order, Trustee Process Attachment and Real Estate Attachment (the "Injunction Motion").  In support of this motion, defendants rely upon the Affidavit of Nuri Otus previously filed in opposition to the Injunction Motion (the "Otus Affidavit").

## I.  Background

Micro Signal Research, Inc. ("MSR") filed this action on or about October 28, 2004, claiming that Nuri Otus and Maureen Cunningham ("defendants') converted plaintiff's funds, committed fraud, and violated G.L. c. 93A.  Plaintiff also filed the Injunction Motion which the Court declined to grant <u>ex</u> <u>parte</u>.  The Court (Gorton, J.) scheduled a hearing date after short order of notice, and defendants filed a memorandum in opposition to the Injunction Motion (the "Opposition"), and submitted the Otus Affidavit.  After hearing on November 4, 2004, the Court (Harrington, J.) issued the Order, granting the requested relief in the form of an injunction and real estate and trustee process attachments.  On November 9, 2004, defendants filed a Notice of Appeal.

## II.  Argument

"Stays of injunctive orders are evaluated under the traditional four-part standard applied to injunctions." <u>Acevedo-Garcia v. Vera-Monroig</u>, 296 F.3d 13, 16 (1st Cir. 2002).  "The sine qua non of the stay pending appeal standard is whether the movants are likely to succeed on the merits." <u>Id.</u> at 16, quoting <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993).  The issuance of a stay depends on whether the harm caused movant without the stay, in light of the movant's likelihood of eventual success on the merits, outweighs the harm the stay will cause the non-moving party. <u>Id.</u> at 16-17. <u>See also</u> <u>United Steelworkers of America v. Textron, Inc.</u>, 836 F.2d 6, 7 (1st Cir. 1987) (internal quotations omitted).  The considerations are: (i) whether

2

the applicant has made a strong showing of success on the merits; (ii) whether the applicant will be irreparably harmed absent injunctive relief; (iii) whether issuance of the stay will injure other parties; and (iv) where the public interest lies.  Id. at 17, citing Hilton v. Braunskill, 481 U.S. 770, 776-77, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

The Court's decision granting the injunction will be reviewed by the Appeals Court under a relatively deferential gloss.  Hiller Cranberry Products, Inc. v. Koplovsky, 165 F. 3d 1, 4 (1st. Cir. 1999).  In this case, however, the First Circuit will likely conclude that Court (i) erred by granting injunctive relief and attachments that exceed its authority and jurisdiction; (ii) abused its discretion by disregarding affidavit and documentary evidence that refute plaintiff's unsupported claims; and (iii) failed to set forth any findings or conclusions of law from which one can discern the basis for the Order, required by Fed.R.Civ.P. 52(a).[1]

A.  The Court abused its discretion in granting the attachments and injunctive relief

The Otus Affidavit contained voluminous certifications and documents, proffered under penalty of perjury, explaining in detail the corporate formalities that were observed by AuctioNet, and why plaintiff was unlikely to

---

[1] Fed. R. Civ. P. 65 requires that "[e]very order granting an injunction to shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

succeed on claims against defendants in their individual capacities.  The Court appeared not to consider any of the evidence.

Instead, the Court found likelihood of success on the merits, despite an absence of requisite elements necessary to pierce the corporate veil.  In Hiller Cranberry Products, Inc. v. Koplovsky Foods, Inc., 2 F. Supp. 2nd 157 (D. Mass. 1998), this Court declined to grant plaintiff's requests for attachment in a corporate veil case.  The Court held that a plaintiff must meet a "very high standard" to establish an individual's liability as the alter ego of a corporate entity.  Hiller, 2 F. Supp. 2nd at 161.  See also, American Home Assurance Company v. Sport Maska, Inc., 808 F. Supp. 67, 73 (D. Mass. 1992), and noted that, under Massachusetts law, "disregarding separate corporate entities is the exception, not the rule."

In Hiller, this Court upheld the long-established standard that "piercing the corporate veil is permitted only (i) where one corporation actively and directly participates in the activities of the second corporation, apparently exercising pervasive control, and there is some fraudulent or injurious consequence of the intercorporate relationship, or (ii) there is a confused intermingling between corporate entities engaged in a common enterprise."  Hiller, supra at 161, citing My Bread Baking Co. v. Cumberland Farms, Inc., et al., 353 Mass. 614, 618-619 (1968).  This Court looked to the holding in the case of Birbara v. Locke, 99 F. 3rd 1233 (1st Cir. 1996) where the Circuit Court focused its concern on those instances where plaintiff had been misled about the identity of the corporate entity with whom

4

he was dealing.  In this case, as in <u>Hiller</u>, there was no failure to make clear which corporation was taking action, nor was there any failure to observe with care the corporate form.

As set forth in the Otus Affidavit, all communications with the plaintiff from Mr. Otus were explicitly in his capacity as Chief Executive Officer of AuctionNet.  As stated in <u>Hiller</u>, and the cases cited therein, to establish a likelihood of success on the merits, a plaintiff must establish more than just two, three or four of the factors established in the case of <u>Pepsi-Cola v. Metropolitan Bottling Company v. Checkers, Inc.</u>, 754 F. 2nd 10, 15 (First. Cir. 1985).  In this case, plaintiff failed to establish *any* of the factors established in <u>Pepsi</u>.

The Court should have concluded that the alleged agreement at issue in this case was not between plaintiff and Mr. Otus or Ms. Cunningham, but rather with Realm, d/b/a AuctioNet.  All of the email communications which plaintiff contends establish the contractual relationship are from Mr. Otus <u>in his explicit capacity as CEO of AuctioNet</u>.  Finally, Cupertino National Bank & Trust, the bank to which plaintiff alleges it wire transferred funds in connection with the transaction, maintained the account in the name of "Realm Connect Corporation d/b/a AuctioNet.com."  Otus Aff., ¶¶ 11 - 12.  The evidence established that plaintiff knew, or reasonably should have known throughout the transaction, that it was dealing with a corporate entity, not an individual.

### B. The grant of the preliminary injunction was erroneous because it improperly restrains unrelated third parties

The Order requires defendants to pay to the Court all proceeds from an auction conducted by Mr. Otus, as an independent contractor, for Asset Management Associates Group, Ltd. ("AMA"). Grant of the injunction was erroneous because AMA is not a party to this litigation, and was not afforded an opportunity to be heard. In addition, plaintiff made no showing that AMA is subject to the jurisdiction of this Court. The only evidence offered on this subject are the certifications by Mr. Otus that AMA is a Delaware corporation which has conducted no operations in Massachusetts. Finally, AMA acts only as the auctioneer of certain items and therefore holds the proceeds from any sales in trust for the actual owners of those goods which are sold. Therefore, the requirement that defendants pay to the Court all proceeds from the auction held on October 28, 2004 deprives not only AMA, but also unnamed and unascertained third parties against whom plaintiff has not even alleged any wrongdoing.

Despite the fact that Fed. R. Civ. P. Rule 65 provides that only the parties to an action may be bound by an injunction, the Court nevertheless ordered the disposition of proceeds from an auction held on or about October 28, 2004, which are due to AMA and its customers. The Order underscores the extent to which the Order did not seriously weigh relative harms at issue. The injunction could be construed to allow plaintiff to attach funds which belong neither to defendants, nor to any named party in the litigation.

Finally, there was no evidence proferred that AMA is acting in concert with defendants. For these funds to be attached and for them not to be disbursed to AMA, or its customers who are ultimately entitled to the proceeds from the auction, for the pendency of this litigation, is extraordinary under any circumstances.

Defendants filed their notice of appeal of the Court's grant of injunction within five (5) days of the Court's Order, and immediately thereafter ordered the hearing transcript. The record should be assembled and forwarded to the Circuit Court of Appeals within a matter of weeks. By proceeding expeditiously, any hypothetical harm resulting from a stay will be minimized, and, in the interim, sweeping harm and wholly unwarranted injury to AMA, its customers, and defendants will be avoided.

C. <u>Grant of attachments was erroneous as a matter of law</u>

The Court erred as a matter of law by granting attachments against defendants' California property. The Court is empowered to grant prejudgment security, but only "under the circumstances and in the manner provided by the law of the state in which the district court is held . . .". Fed. R. Civ. P. Rule 64. <u>See</u>, <u>Hiller</u>, supra. The grant of real estate and trustee process attachments was erroneous as a matter of law because such relief is beyond the jurisdiction of this Court. Attachments are ineffective in California and create unnecessary expense and legal uncertainty for defendants. Plaintiff will obtain and attempt to serve a summons to trustee, and will attempt to record a writ against real estate in California. As a result, defendants must

suffer the expense of addressing these attachments in California when it is clear they have no legal or binding effect.

1. <u>The trustee process attachment is without basis in law</u>

The Court exceeded its authority in granting trustee process attachment of funds held by Cupertino National Bank & Trust because the trustee process defendant is not subject to the jurisdiction of this Court. General Laws, c. 246, § 1 in part provides: "All personal actions . . . [with immaterial exceptions] may be commenced by trustee process and any person may be summoned as trustee of the defendant therein . . . . An individual who is not an inhabitant of the Commonwealth, or a foreign corporation or association, shall not be so summoned unless he or it has a usual place of business in the Commonwealth." Trustee defendant Cupertino National Bank does not have a usual place of business in the Commonwealth. Instead, as set forth in the Otus Affidavit, the purported trustee defendant conducts business only in California. Otus Aff., ¶ 15. Thus, the Court erred by entering an order attaching by trustee process the assets of Mr. Otus and Ms. Cunningham, if any, in the possession of Cupertino National Bank. <u>See</u>, <u>e.g.</u> <u>Wyshak v. Anaconda Copper Mining Company</u>, 328 Mass. 219, 222-223 (1952).

2. <u>The Court cannot attach real property located outside the Commonwealth of Massachusetts</u>

A writ of attachment issued in Massachusetts is ineffective against California realty. Defendants own no real estate in Massachusetts, Otus Aff., ¶ 16, and the Court lacks jurisdiction to order the attachment of real

property located in California.  A District Court may issue pre-judgment remedies only as may be consistent with state law.  General Laws, c. 223, § 20 provides that process, and therefore writs of attachment, "may run, and shall be executed and obeyed throughout the Commonwealth."  Mass. R. Civ. P. Rule 4.1, Reporter's Notes, third paragraph (1973).  Therefore, the writ of attachment issued in Massachusetts will have no force or effect in California.

### III.   Conclusion

WHEREFORE, defendants Nuri Otus and Maureen Cunningham respectfully request that this Court issue a stay of the litigation, and all injunctive relief previously granted, pending the outcome of defendants' appeal to the First Circuit Court of Appeals.

Respectfully submitted,

NURI OTUS and MAUREEN CUNNINGHAM,
By their attorneys,


/s/ Michael C. Fee
FEE, ROSSE & LANZ, P.C.
Michael C. Fee (BBO #552796)
Sabrina K. Lanz (BBO #567392)
321 Boston Post Rd.
Sudbury, MA 01776
T:  (978) 440-7000
F:  (978) 440-7650
www.feelaw.com


Dated:  November 19, 2004


## CERTIFICATE OF SERVICE

I, Michael C. Fee, hereby certify that a true copy of the foregoing document was served upon all counsel of record, by first class mail directed to Timothy J. Perry, Esq., Perry, Krumsiek & Wayland, P.A., Suite 200, 114 State Street, Boston, MA 02109 this 19th day of November, 2004.


/s/ Michael C. Fee
Michael C. Fee