UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

Case # 1:04-CV-12300-EFH

| | |
|---|---|
| MICRO SIGNAL RESEARCH, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| NURI OTUS and MAUREEN CUNNINGHAM, | ) |
| Defendants, | ) |
| and | ) |
| CUPERTINO NATIONAL BANK & TRUST, | ) |
| Trustee Defendant. | ) |

ANSWER AND JURY DEMAND OF DEFENDANT NURI OTUS

Pursuant to Fed. R. Civ. P. 12, defendant Nuri Otus ("Mr. Otus") hereby answers the Complaint ("Complaint") of Micro Signal Research, Inc. ("MSRI") as follows:

I.   Introduction

Mr. Otus states that the introduction of MSR's Complaint contains conclusions of law to which no response is required. To the extent a response is necessary, Mr. Otus denies all allegations contained in the Complaint's Introduction.

## II. Parties

1. On information and belief, Mr. Otus admits the allegations contained in paragraph 1.

2. Mr. Otus admits the allegations contained in the first sentence of paragraph 2. Mr. Otus admits that at all times relevant hereto he was the President and CEO of AuctioNet, Inc., a division of Realm Connect Corporation, a California corporation (the "Company"), and that the Company had offices located at 1204 Middlefield Road, Redwood City, CA.

3. Mr. Otus admits the allegations contained in the first two sentences of paragraph 3. Mr. Otus denies the allegations contained in the third sentence of paragraph 3.

4. On information and belief, Mr. Otus admits the allegations contained in paragraph 4.

## III. Jurisdiction and Venue

5. Mr. Otus states that paragraph 5 contains conclusions of law to which no response is required. To the extent a response is necessary, Mr. Otus denies the allegations contained in paragraph 5.

## IV. Allegations Common to All Counts

6. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 6.

7. Mr. Otus admits that the Company operated a business at 1204 Middlefield Road, Redwood City, California, and subsequently utilized Post Office Box No. 631, in Burlingame, California.

8.   Mr. Otus admits that the Company was engaged in the business of buying and selling, privately and at auction, used equipment, as set forth in the fist sentence of paragraph 8.  Due to the lack of specificity of the allegation, however, Mr. Otus is without information sufficient to form a belief as to whether or not he "represented" that the Company was engaged in such business.  To the extent MSR wishes to provide greater detail regarding when, where, and to whom such representations were allegedly made, Mr. Otus will supplement this answer.  Mr. Otus admits the allegations contained in the second sentence of paragraph 8.  Mr. Otus admits that in or about September 2003 he communicated to MSR that he was the CEO of the Company.  Mr. Otus denies the remaining allegations contained in the third sentence of paragraph 8.  Mr. Otus denies the allegations contained in the fourth sentence of paragraph 8.  Answering further, Mr. Otus states that at all times relevant hereto, the Company was organized and validly existed under the laws of the State of California.

9.   Mr. Otus admits that in or about October 2003, in his capacity as CEO of the Company, he proposed a transaction with MSR.  Mr. Otus denies the remaining allegations contained in the first sentence of paragraph 9.  Mr. Otus admits that the purpose of the transaction was to purchase certain electronic equipment for resale, as set forth in the second sentence of paragraph 9.  Mr. Otus admits the allegations contained in the third sentence of paragraph 9.  Mr. Otus is unable to admit or deny the allegations contained in the forth sentence of paragraph 9, specifically that portion of the

allegation stating that "equipment was purported by Mr. Otus to be in Pleasanton, California."

10.  Mr. Otus admits that the Company and MSR agreed to the terms of a business transaction.  Mr. Otus denies MSR's characterization of the Agreement as one where both parties offered "their expertise and services to the venture, along with the division of the costs, responsibilities and management duties."  Rather, and answering further, Mr. Otus states that the terms of the transaction required each party to contribute funds for the purchase of certain equipment which would later be resold by the Company, with net profits distributed to the Company and MSR in accordance with their pro rata contributions.

11.  Mr. Otus admits that some of the terms of the transaction between the Company and MSR were reflected in a series of emails exchanged between MSR and Mr. Otus, in his capacity as CEO of the Company, October 24, 2003 and November 11, 2003.  Mr. Otus denies the remaining allegations contained in paragraph 11.

12.  Mr. Otus admits that he provided to MSR, via email, a list of the equipment that was to be purchased and resold.  Mr. Otus denies the remaining allegations contained in paragraph 12.

13.  Mr. Otus admits that on November 10, 2003, he sent Mr. Epstein an email.  Answering further, Mr. Otus states that the terms of the email speak for themselves.

14.  Mr. Otus admits that the Mr. Epstein responded to the email from

4

Mr. Otus of November 10, 2003. Answering further, Mr. Otus states that the terms of the email speak for themselves.

15. Mr. Otus admits that on or about November 12, 2003 MSR caused the sum of $210,000.00 to be wired to the Company's account. Mr. Otus denies that the "wire" specifically stated anything.

16. Mr. Otus admits that on November 12, 2003, Mr. Epstein sent him an email. Answering further, Mr. Otus states that the terms of the email speak for themselves.

17. Mr. Otus denies the allegations contained in the first sentence of paragraph 17. Mr. Otus denies the allegations contained in the second sentence of paragraph 17. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in the third sentence of paragraph 17 regarding MSR's "knowledge". Mr. Otus denies the allegations contained in the fourth sentence of paragraph 17.

18. Mr. Otus admits that Mr. Epstein sent an email to him on December 21, 2003. Answering further, Mr. Otus states that the terms of the email speak for themselves. Mr. Otus denies that he failed to respond to the email.

19. Mr. Otus admits that on December 28, 2003, Mr. Epstein sent him an email. Mr. Otus states that the terms of the email speak for themselves. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 19. Without admitting the relevance of significance of the allegations contained in the third sentence of paragraph 19, Mr. Otus admits them.

20. Mr. Otus denies the allegations contained in the first sentence of paragraph 20. Mr. Otus admits that on one occasion he advised Mr. Epstein that his mother had fallen ill. Mr. Otus denies that such representation was "an excuse for his failure to follow through on his promises."

21. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 21. Mr. Otus denies the allegations contained in the second sentence of paragraph 21.

22. Mr. Otus admits that on or about February 4, 2004 Mr. Epstein sent him an email. Answering further, Mr. Otus states that the terms of the email speaks for themselves.

23. Mr. Otus admits that he sent an email to Mr. Epstein dated February 4, 2004. Answering further, Mr. Otus states that the terms of the email speak for themselves. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 23. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations regarding MSR's "beliefs."

24. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 24. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences of paragraph 24.

25. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26. Mr. Otus admits that on March 9, 2004, Mr. Epstein sent him an

email. Answering further, Mr. Otus states that the terms of the email speaks for themselves.

27. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in the first, second, third, fourth, fifth, sixth, and seventh sentences contained in paragraph 27. Mr. Otus admits that in or about April, 2004, Mr. Epstein contacted David Greenseid, Esq. as alleged in the eighth sentence of paragraph 27. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in the ninth sentence of paragraph 27. Mr. Otus admits that he telephoned Mr. Epstein in or about April, 2004, as alleged in the tenth sentence of paragraph 27. Mr. Otus denies the remaining allegations contained in paragraph 27.

28. Mr. Otus admits that on or about April 6, 2004, Mr. Epstein wrote to Mr. Otus, Ms. Cunningham and Mr. Quiroga. Answering further, Mr. Otus states that the terms of Mr. Epstein's communication speak for themselves.

29. Mr. Otus denies the allegations contained in paragraph 29.

30. Mr. Otus admits that by letter dated June 20, 2004, MSR demanded repayment of $210,000.000.

31. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

32. Mr. Otus admits that by letter dated June 22, 2004, Mr. Greenseid communicated with MSR's counsel. Answering further, Mr. Otus states that the terms of Mr. Greenseid's letter speak for themselves.

33. Mr. Otus lacks information sufficient to form a belief as to the

truth of the allegations contained in paragraph 33.

34. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 34.

35. Mr. Otus admits that by letter dated July 19, 2004, Mr. Greenseid communicated with MSR's counsel. Mr. Otus states that the terms of Mr. Greenseid's letter speak for themselves.

36. Mr. Otus states that the terms of documents accompanying Mr. Greenseid's July 19, 2004 letter speak for themselves.

37. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

38. Without admitting the relevance or significance thereof, Mr. Otus admits the allegations contained in the first clause of paragraph 38. Mr. Otus lacks information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 38.

39. Mr. Otus denies that Mr. Greenseid's alleged assurances pertain to any personal obligation of Mr. Otus. Mr. Otus admits that by letter dated August 23, 2004, Mr. Greenseid communicated to Mr. Epstein's counsel. Answering further, Mr. Otus states that the terms of Mr. Greenseid's letter speak for themselves.

40. Without admitting the relevance or significance thereof, Mr. Otus admits the allegations contained in the first clause of paragraph 40. Mr. Otus lacks information sufficient to form a belief as to the allegation that "repeated calls to Mr. Otus' [sic] counsel from my attorney were not

returned."

41.  Mr. Otus admits that by letter dated September 10, 2004, Mr. Greenseid communicated with MSR's counsel.  Mr. Otus states that the terms of Mr. Greenseid's letter speak for themselves.

42.  Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 42.  Mr. Otus admits that by letter dated September 10, 2004, Attorney Greenseid communicated with MSR's attorney.  Mr. Otus states that the terms of Mr. Greenseid's letter speak for themselves.

43.  Without admitting the relevance or significance thereof, Mr. Otus admits the allegations contained in the first clause of paragraph 43.  Mr. Otus lacks information sufficient to form a belief as to the truth of the allegation that "numerous telephone calls to Attorney Greenside by MSR's counsel were not returned."

44.  Mr. Otus admits that by facsimile dated October 1, 2004, Mr. Greenseid communicated with MSR's counsel.  Mr. Otus states that the terms of Mr. Greenseid's facsimile speak for themselves.

45.  Mr. Otus admits that on or about October 25, 2004, he sent an email to Mr. Epstein.  Without admitting the relevance or significance thereof, Mr. Otus admits that as of October 25, 2004 he was working as an independent contractor to Asset Management Associates, also known as amalimited.com.  Mr. Otus admits that he utilizes a database, that was also available to him while he was employed by the Company, in his work for Asset

9

Management Associates, as alleged in the second sentence of paragraph 45. Mr. Otus lacks information sufficient to form a belief as to whether or not the Company's website is no longer accessible on the internet.

46. Mr. Otus admits that Asset Management Associates posted an advertisement on Craig's List. Mr. Otus denies the remaining allegations contained in paragraph 46.

47. Denied.

48. Mr. Otus repeats and realleges his previous answers as if fully set forth herein.

49. Mr. Otus admits that in or about October 2003, in his capacity as CEO of the Company, he proposed a transaction with MSR. Mr. Otus denies the remaining allegations contained in the first sentence of paragraph 9. Mr. Otus admits that the purpose of the transaction was to purchase certain electronic equipment for subsequent resale.

50. Mr. Otus admits that on November 10, 2003, he sent Mr. Epstein an email. Answering further, Mr. Otus states that the terms of the email speak for themselves. Mr. Otus lacks information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 50.

51. Mr. Otus admits that MSR wired $210,000.00 to the Company on November 12, 2003. Mr. Otus lacks information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 51.

52. Mr. Otus admits that the Company received the funds, and that he has repeatedly acknowledged that the Company received the funds.

53.  Denied.

54.  Mr. Otus denies making any misrepresentations to MSR.  Answering further, Mr. Otus admits that on numerous occasions he has communicated to MSR, both individually and by and through counsel, of his desire that the Company satisfy its debt to MSR.

55.  Denied.

56.  Mr. Otus repeats and realleges his prior answers as if fully set forth herein.

57.  Mr. Otus denies that MSR wired $210,000.00 to the personal account of Mr. Otus and Ms. Cunningham.  Answering further, Mr. Otus states that at all times relevant hereto, all funds were wired to and deposited into the Company's account.

58.  Mr. Otus admits the allegations contained in paragraph 58.  Mr. Otus denies that Ms. Cunningham ever made any representations or communications to MSR regarding any aspect of the transaction.

59.  Denied.

60.  Denied.

61.  Mr. Otus repeats and realleges his prior answers as if fully set forth herein.

62.  Denied.

63.  Denied.

64.  Denied.

65.  Denied.

66. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 66.

67. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 67.

68. Mr. Otus repeats and realleges his prior answers as if fully set forth herein.

69. Mr. Otus states that the allegations contained in paragraph 69 are conclusions of law to which no response is required. To the extent a response is necessary, Mr. Otus denies them.

70. Denied.

71. Mr. Otus denies that MSR provided $210,000.00 to the defendants. Answering further, Mr. Otus states that at all times relevant hereto, all funds in the transactions were provided by MSR to the Company.

72. Mr. Otus lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 72.

73. Denied.

74. Mr. Otus repeats and realleges his prior answers as if fully set forth herein.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Mr. Otus repeats and realleges his prior answers as if fully set forth herein.

81. Denied.

82. Denied.

83. Mr. Otus repeats and realleges his prior answers as if fully set forth herein.

84. Denied.

85. Denied.

86. Denied.

87. Mr. Otus repeats and realleges his prior answers as if fully set forth herein.

88. Denied.

89. Denied.

90. Denied.

91. Mr. Otus repeats and realleges his prior answers as if fully set forth herein.

92. Denied.

93. Denied

94. Denied.

### V.   Affirmative Defenses

1. Mr. Otus states that each Count of the Complaint fails to state a cause of action for which relief can be granted.

2. Mr. Otus says that the Court lacks personal jurisdiction over the

defendants.

3.   Mr. Otus says that plaintiff is estopped by its own conduct and can recover nothing from the defendants.

4.   Mr. Otus says that plaintiff has waived any rights it may have had against defendants.

5.   Mr. Otus says that recovery on the Complaint is barred by plaintiff's laches.

6.   Mr. Otus says that if plaintiff suffered damages as alleged, such damage resulted from a commercial risk which plaintiff knowingly, willingly and voluntarily assumed, and plaintiff can recover nothing from the defendants therefor.

7.   Mr. Otus says that if plaintiff suffered damage as alleged such damage resulted from plaintiff's own mismanagement, negligence, lack of business acumen, or failure to conduct an independent investigation and analysis, and plaintiff can recover nothing from defendants therefor.

8.   Mr. Otus says that if he ever made any representations to plaintiff, such representations were true and plaintiff can recover nothing from defendants therefor.

9.   Mr. Otus says that if he ever made any representations to plaintiff, such representations did not relate to matters susceptible to actual knowledge and plaintiff can recover nothing from defendants therefor.

10.  Mr. Otus says that if he ever made any representations to plaintiff, he reasonably believed such representations to be true at the time

made and plaintiff can recover nothing from defendants therefor.

11.  Mr. Otus says that if plaintiff suffered damage as alleged, such damage was in no way caused by defendants, or by any person acting with, through or under defendants, or by any person or entity for whose or which conduct defendants are legally responsible, and plaintiff can recover nothing from defendants therefor.

12.  Mr. Otus hereby reserves the right to assert additional affirmative defenses as may be determined through discovery in the further course of this action.

## VI.    Jury Demand

Mr. Otus demands a trial by jury on all counts so triable.

                                        Respectfully submitted,

                                        NURI OTUS and MAUREEN CUNNINGHAM,
                                        By their attorneys,

                                        /s/ Michael C. Fee
                                        FEE, ROSSE & LANZ, P.C.
                                        Michael C. Fee (BBO #552796)
                                        Sabrina K. Lanz (BBO #567392)
                                        321 Boston Post Rd.
                                        Sudbury, MA 01776
                                        T:  (978) 440-7000
                                        F:  (978) 440-7650
                                        www.feelaw.com

Dated:   January \_\_\_\_, 2005

## CERTIFICATE OF SERVICE

    I, Michael C. Fee, hereby certify that a true copy of the foregoing document was served upon all counsel of record, by first class mail directed to Timothy J. Perry, Esq., Perry, Krumsiek & Wayland, P.A., Suite 200, 114 State Street, Boston, MA 02109 this \_\_\_\_\_ day of January, 2005

                                        /s/ Michael C. Fee
                                        Michael C. Fee

Mtd.doc