FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2005 JAN 25  P 2: 49

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| MICRO SIGNAL RESEARCH, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 04-12300-EFH |
| NURI OTUS and MAUREEN CUNNINGHAM, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| CUPERTINO NATIONAL BANK & TRUST, ) | |
| ) | |
| Trustee Process Defendant. ) | |

## **OPPOSITION TO MAUREEN CUNNINGHAM'S MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff Micro Signal Research, Inc. ("MSR") hereby opposes the motion to dismiss of Defendant Maureen Cunningham.[1] As reasons therefore, MSR states as follows:

**I.   Introduction**

In sum, Ms. Cunningham's motion to dismiss is a misguided effort to continue to avoid personal liability in this matter after she and her husband, co-defendant Nuri Otus, absconded with MSR's $210,000 in cash. That the complaint does not contain specific allegations of wrongdoing against Ms. Cunningham is yet another misrepresentation to the Court by the Defendants. The essence of the complaint is that Mr. Otus and Ms.

---

[1] It should be noted at the outset that although the Defendants have repeatedly represented to counsel and even this Court that they intend to repay the money stolen from MSR, they continue to ratchet up legal costs rather than simply pay their debt. These costs include appealing the preliminary relief obtained in this matter and now Ms. Cunningham's motion to dismiss. MSR must continue to pay legal fees to respond to these procedural maneuvers.

Cunningham operated as a husband-wife con team and that Ms. Cunningham fully participated in the scheme to defraud MSR of $210,000.

Although MSR has not had the benefit of discovery, there is much evidence that Ms. Cunningham was fully involved in the scam and is personally liable. First, as set forth in the complaint, although the Defendants called themselves AuctioNet.com, Inc. when they induced MSR to give them $210,000, they never incorporated and never observed corporate formalities. Indeed, when MSR pressed for the return of its stolen $210,000, Mr. Otus *and* Ms. Cunningham simply closed the AuctioNet website and opened a new site. The announcement for the new site stated: "**Nuri Otus and Maureen Cunningham** are pleased to announce the formation of Asset Management Associates Group, Ltd." A true copy of that e-mail is attached hereto as Exhibit A. The new "company" performed the identical services as the old "company." The only difference: Mr. Otus and Ms. Cunningham were trying to avoid their old debts. Moreover, the new site was opened a mere ten days before the first auction that Mr. Otus and Ms. Cunningham operated under the name Asset Management Associates.

Second, we now know from the accounting provided by the Defendants of their October 28, 2004 auction that Ms. Cunningham is the primary beneficiary of commissions from the auction. A true copy of the accounting provided by Defendants showing $10,377.03 in commissions paid to Ms. Cunningham for one day's work is attached hereto as Exhibit B. Third, contrary to the representation by Ms. Cunningham that she had no communications with MSR, attached as Exhibit C hereto is an e-mail demand made by MSR directly to Ms. Cunningham on April 16, 2004. There were also

Paragraph 3 asserts that Ms. Cunningham held herself out as vice president and chief financial officer of AuctioNet. As the complaint later sets forth, the existence of AuctioNet as a valid legal entity was a sham. See Complaint, Paragraph 47. Rather, AuctioNet was utilized by Ms. Cunningham and Mr. Otus as a front so that they could personally benefit from the assets they obtained from MSR. See Complaint, Paragraph 53, 59 (Mr. Otus and Ms. Cunningham converted the funds for their own use); Paragraph 57 (MSR wired $210,000 to the account of Mr. Otus and Ms. Cunningham who were doing business as AuctioNet, Inc.); Paragraph 58 (both defendants, acting in concert, represented that the money would be used to purchase used equipment); Paragraphs 62-66 (Ms. Cunningham, through her agent Mr. Otus, made oral and written false statements as set forth throughout the complaint).

MSR further alleges in Paragraph 28 of the complaint that it forwarded a letter to Mr. Otus and Ms. Cunningham accusing them both of the wrongful scheme alleged in the complaint. That letter is attached to the Affidavit of Daniel Epstein that has been submitted in this matter as Exhibit 17. MSR asserts that it was only later, when it became convenient to them, that Ms. Cunningham and Mr. Otus simply closed the AuctioNet website and opened a new site under a different name. MSR also assets that, despite her current representation that she is merely an officer of the corporation, there was never any effort by Ms. Cunningham, Mr. Otus or AuctioNet to observe corporate formalities. As such, Ms. Cunningham's effort to avoid personal liability based upon corporate privileges should be rejected out of hand.

Paragraph 5 asserts that Defendants (both Ms. Cunningham and Mr. Otus) have initiated substantial contacts within the Commonwealth of Massachusetts including

conducting continuous business within the Commonwealth, approaching and inducing MSR into the joint venture alleged in the complaint and advertising within the Commonwealth. There was no distinction made between Mr. Otus and Ms. Cunningham in these allegations. Rather, it is clear that MSR is alleging in this Complaint that Ms. Cunningham and Mr. Otus were partners in crime.

Paragraphs 32-36 sets forth in detail Ms .Cunningham's and Mr. Otus' scheme to convince MSR to refrain from going to the authorities to recover the money stolen. In those paragraphs, and the corresponding correspondence that is attached to the Epstein Affidavit, counsel for Mr. Otus and Ms. Cunningham continually advises MSR that Mr. Otus and Ms. Cunningham agreed to use their family home as collateral to obtain funds necessary to "repay" MSR. This is obviously significant for two reasons. It proves that the Defendants' corporate veil arguments are a sham. If Ms. Cunningham was simply a corporate officer as she now contends, it is unfathomable that she would put up her family home to secure debts of the corporation for which she was a mere employee. Second, it shows that Ms. Cunningham acknowledges being a joint venturer in Mr. Otus' scheme.

In Paragraph 39, it is asserted that Ms. Cunningham's counsel sent a letter stating that he was "informed by Nuri Otus' wife [Ms. Cunningham] that the paperwork for the refinance of their home should be completed by the end of this week and funding [for repayment of the $210,000] should occur within a few days afterward." This letter is attached to the Affidavit of Daniel Epstein as Exhibit 23.

5

### III.   Standard for Motions to Dismiss

Ms. Cunningham moves to dismiss under Rule 12(b)(6). On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the nonmovant's complaint and must draw all reasonable inferences in favor of the nonmovant. See, e.g., Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Dismissal "is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." Id. Stated another way, a motion to dismiss under Rule 12(b)(6) must be denied "unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts." Roma Construction Co. v. Russo, 96 F.3d 566, 569 (1st Cir. 1996). It is incumbent upon the Court to "accept the complaint's allegations as true, including all reasonable inferences in favor of [the non-moving party]." Kiely v. Raytheon Co., 105 F.3d 734, 735 (1 Cir. 1997); Hogan v. Eastern Enterprises/Boston Gas, 165 F.Supp.2d 55, 57 (D. Mass. 2001).

### IV.   Ms. Cunningham Cannot Meet Her Burden For Gaining A Dismissal

#### A.   The Claims Against Ms. Cunningham Cannot Be Dismissed Because MSR Sets Forth Sufficient Allegations For The Relief Sought

As shown above, there are ample allegations contained in the complaint to show that Ms. Cunningham is personally liable for the claims stated in the complaint. Indeed, Ms. Cunningham does not appear to contest the fact that MSR sets forth valid causes of action for which relief may be granted, but rather appears to contest her role in the scheme alleged. Such contests are a matter for summary judgment if not trial. Nonetheless, it is clear from the specific allegations in the complaint that Ms. Cunningham shall be personally liable.

6

Although MSR has not had the benefit of discovery, there is much evidence that Ms. Cunningham was fully involved in the scam. MSR relies on Section II, above, showing the specific allegations in the complaint from which Ms. Cunningham's personal liability derives. MSR further points out that, as set forth in the complaint, although the Defendants called themselves AuctioNet.com, Inc., they never incorporated and never observed corporate formalities. Indeed, when MSR pressed for the return of its stolen $210,000, Mr. Otus *and* Ms. Cunningham simply closed the AuctioNet website and opened a new site. The announcement for the new site stated: "**Nuri Otus and Maureen Cunningham** are pleased to announce the formation of Asset Management Associates Group, Ltd." See Exhibit A. The new "company" performed the identical services as the old "company." The only difference: Mr. Otus and Ms. Cunningham were trying to avoid their old debts. Moreover, the new site was opened a mere ten days before the first auction that Mr. Otus and Ms. Cunningham operated under the name Asset Management Associates.

Second, we now know from the accounting provided by the Defendants of the October 28, 2004 auction that Ms. Cunningham is the primary beneficiary of commissions from the auction. See Exhibit B. Exhibit B shows that Ms. Cunningham was paid $10,377.03 in commissions for one day's work. Third, contrary to the representation by Ms. Cunningham that she had no communications with MSR there were communications directly between MSR and Ms. Cunningham. See Exhibit C.

Fourth, as a result of these communications, and in an acknowledgement that she was fully and personally liable for the $210,000 debt, MSR was repeatedly told by Ms. Cunningham's counsel that she and Mr. Otus were willing to re-finance their own home

7

in order "*repay*" the money Ms. Cunningham helped steal. These communications are referenced in the complaint and are attached to the Affidavit of Daniel Epstein that was filed therewith. Had Ms. Cunningham not been a participant in this scheme, it is unfathomable that she would have been willing to buy her way out of trouble with the equity in her home. Under the circumstances, and at this stage of the proceedings, it is clear that MSR has stated proper causes of action against Ms. Cunningham and that the motion to dismiss must be denied.

**B.    This Court Has Personal Jurisdiction Over Ms. Cunningham**

Although not properly stated in her motion to dismiss, Ms. Cunningham appears to challenge the fact that this Court has "<u>in personam</u>" jurisdiction to resolve claims against her. She is incorrect procedurally and factually. If personal jurisdiction is challenged, the burden is on the plaintiff to show a <u>prima facie</u> case authorizing personal jurisdiction. <u>U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.</u>, 894 F.2d 9, 11 (1st Cir. 1990). MSR has done so because it has made "a prima facie showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits...." <u>Ealing Corp. v. Harrods Ltd.</u>, 790 F.2d 978, 979 (1st Cir. 1986). Under the <u>prima facie</u> test "a district court does not act as a factfinder; to the contrary, it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." <u>Rodriguez v. Fullerton Tires Corp.</u>, 115 F.3d 81, 84 (1st Cir.1997).

Without specific citations or factual support, Ms. Cunningham merely suggested through her counsel's motion that there is a lack of <u>in personam</u> jurisdiction because, counsel states, she did not have direct contact with MSR. As shown above, this statement

8

is factually incorrect. There were e-mails and letters directly between MSR and Ms. Cunningham and several communications to MSR through her counsel.

Even if the Court reviewed the in personam question in detail, however, Ms. Cunningham still loses the argument. In personam jurisdiction "relates to the power of a court over a defendant. It is of two varieties, general and specific. General personal jurisdiction ... is the power of a forum-based court ... 'which may be asserted in connection with suits not directly founded on [that defendant's] forum-based conduct....'" Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir.1994); quoting Donatelli v. National Hockey League, 893 F.2d 459, 462-463 (1st Cir.1990).

The assertion of general jurisdiction comports with due process when: (1) there are "continuous and systematic general business contacts" between the foreign defendant and the forum; and (2) the exercise of jurisdiction is reasonable under the so-called Gestalt factors. United States v. Swiss American Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). The well-pleaded allegations of the complaint show precisely that Ms. Cunningham, through her own actions and those of her co-conspirator, Mr. Otus, engaged in continuous and systematic general business in the Commonwealth of Massachusetts through their solicitation of business on their various web-sites and holding auctions in which Massachusetts residents participated on a regular basis.

"Specific personal jurisdiction, by contrast, is narrower in scope and may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" Pritzker, 42 F.3d at 60. "The proper exercise of specific *in personam* jurisdiction hinges on satisfaction of two requirements: first, that the forum in which the federal district court sits has a long-arm statute that purports to grant

9

jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the [Due Process Clause of the] Constitution." Id.

The allegations in the complaint support specific jurisdiction against Ms. Cunningham as well. Under the Massachusetts long-arm statute, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; ... [or] (c) causing tortious injury by an act or omission in this commonwealth." G.L. c. 223A, §§ 3(a) and (c). MSR alleges both against Ms. Cunningham.

As to any due process concerns, Massachusetts courts construe section 3(a)'s "transacting business" test as extending jurisdiction to the outermost limit permitted by the Due Process Clause of the U.S. Constitution. See Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik, 295 F.3d 59, 63 (1st Cir. 2002). The Fourteenth Amendment's concern for fundamental fairness is reflected in the requirement that there be certain "minimum contacts" between the defendant and the forum state in order for specific jurisdiction to exist. The "minimum contacts" test is in three parts. "First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Here, the claim relates to Ms. Cunningham's scheme to defraud a Massachusetts company by falsely claiming that proceeds MSR sent from Massachusetts would be used to purchase goods in Texas. Then, Ms. Cunningham gained forebearance on her wrongful acts by continually misrepresenting, through her co-conspirator and attorney, that the money would be returned.

10

Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Id. Clearly, the conduct alleged, including Ms. Cunningham's wrongful acquisition of MSR's $210,000 from its Massachusetts office, meets this test as well. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir.1992).

In determining whether a defendant has "purposefully availed" itself of the privilege of conducting activity in the forum state, a court is to focus on the nature of the contact with the forum and avoid playing a "numbers game"--a single, meaningful contact with the forum, even by means of a virtual presence, "can fill the bill." Pritzker, 42 F.3d at 61; citing McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (a contractual relationship may be sufficient to confer jurisdiction even where the defendant does not physically enter the forum); see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 62 (1st Cir. 2002) (telephone, e-mail, and fax communications directed to the forum state in contemplation of contractual services being in part performed in that forum are evidence of jurisdictional contact). Ms. Cunningham, through her various web-sites, has purposefully availed herself of the privilege of conducting business in the Commonwealth.

The third and final prong of the test requires consideration of the Gestalt factors. These factors test the assertion of jurisdiction with traditional notions of fair play and

11

substantial justice. The factors include "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." 163 Pleasant St. Corp., 960 F.2d at 1088.

Here, both Defendants are sophisticated business persons capable of avoiding their debts by operating various and nefarious business entities and web-sites. They operated nationwide and they trumpet this fact on their web-site. Under the circumstances, there are no "special" or "unusual" burdens on Ms. Cunningham in defending the case in Massachusetts. Pritzker, 42 F.3d at 64; see also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir.1994).

With respect to the second Gestalt factor, Massachusetts has a significant interest in obtaining jurisdiction over non-resident defendants whose conduct causes injury to its citizens, an interest at least as compelling as that of a sovereign concerned with the rights of its citizens called to defend a lawsuit in a foreign forum. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 151 (1st Cir.1995) ("The purpose of the inquiry is not to *compare* the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest."). MSR's interest in obtaining the return of its stolen money is obvious. Moreover, its choice of Massachusetts as the forum in which to seek relief deserves deference. Id.

The fourth factor, the judicial system's interest in obtaining the most efficacious resolution of the controversy, counsels against the piecemeal litigation that would result

if the identical claims against Mr. Otus, who has answered the complaint and not contested jurisdiction, and Ms. Cunningham are severed. See Pritzker, 42 F.3d at 63-64. Finally, with respect to substantive social polices, Massachusetts has a substantial interest in redressing harms inflicted on its citizens by out-of-state defendants as well as in providing a convenient forum in which its citizens may seek relief. See Nowak, 94 F.3d at 719.

### V.   Conclusion

As MSR has stated valid claims for relief against Ms. Cunningham and this Court has personal jurisdiction over her, the motion to dismiss must be denied.

**WHEREFORE**, Plaintiff requests that this Honorable Court DENY Ms. Cunningham's Motion to Dismiss.

Respectfully submitted,

**MICRO SIGNAL RESEARCH, INC.**,

By its attorney,

_____
Timothy J. Perry (BBO #631397)
PERRY, KRUMSIEK & WAYLAND LLP
114 State Street
Boston, MA  02109
(617)  742-9012
fax (617) 742-9013

13

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon all counsel of record by placing same addressed to said counsel in First Class U.S. Mail, pre-paid.

Dated: January 25, 2005

_____
Timothy J. Perry