UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICRO SIGNAL RESEARCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 04-12300-EFH |
| NURI OTUS and MAUREEN CUNNINGHAM, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| CUPERTINO NATIONAL BANK & TRUST, | ) |
| | ) |
| Trustee Process Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS COUNTERCLAIM OF MAUREEN CUNNINGHAM**

Pursuant to Fed. R. Civ. P. 12 (b) (6) and Fed. R. Civ. P. 11, Plaintiff Micro Signal Research, Inc. ("Plaintiff") submits this memorandum of law in support of its motion to dismiss the Counterclaim of Defendant Maureen Cunningham ("Ms. Cunningham") and to strike the request for Rule 11 sanctions made in the Answer and Counterclaim.

**I.    Introduction**

As set forth in the extensive record already before this Court, including Plaintiff's Affidavit, Defendants Nuri Otus and Maureen Cunningham are a savvy, internet husband-wife con team. They start internet auction web-sites, defraud their creditors, then shut down the websites and move on to new websites and victims. In the present case, these defendants stole $210,000 from Plaintiff Micro Signal Research, Inc.

("MSR") a Massachusetts company that was led to believe it was investing in a joint venture with them.

Nonetheless, Defendants' blatant disregard of their victims and the justice system never ceases to amaze – including the hubris displayed by Ms. Cunningham in filing a Counterclaim for Abuse of Process and her counsel's taking aim at the undersigned for "Rule 11" violations. The Court shall recall that Ms. Cunningham and her husband, through their legal counsel, have continually represented – for approximately one year now – that they acknowledge the $210,000 "debt" caused by their fraud and, moreover, that they would return the money by re-financing the multi-million dollar home they own as husband and wife. See Affidavit of Daniel Epstein, Exhibits 20-26. Indeed, even at the hearing before this Court on preliminary injunction, Ms. Cunningham's counsel stated:

> "Your Honor, **they** acknowledge the existence of the debt, and **they** have made attempts to try and work out arrangements. . ."

See Preliminary Injunction Hearing Transcript, p. 8 attached hereto as Exhibit 1.

Nonetheless, rather than abide by their promises of repayment, Defendants appealed the Court's preliminary relief – trying to raise a corporate veil – and are avoiding repayment apparently at all cost. In this context, a claim of Abuse of Process – after Ms. Cunningham's own counsel stated to this Court that "they" (meaning Mr. Otus *and* Ms. Cunningham) acknowledged the debt – is unconscionable.

## II. Argument

### A. Standard for Motions to Dismiss

In reviewing a motion to dismiss filed pursuant to Rule 12(b) (6), this Court must "accept well-pleaded facts as true and draw all reasonable inferences from those facts in

2

favor of the plaintiff." Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998). In reviewing the Complaint, the Court must ask whether the Plaintiff can prove any set of facts that would entitle it to the relief requested. In re: Allaire Corp. Securities Litigation, 224 F. Supp.2d 319, 324 (D. Mass. 2002) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Rule 12(b) (6) tests the legal sufficiency of a complaint. It is not the test of the facts themselves. See Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). Where it appears from a review of the Complaint that the Plaintiff could not legally recover under the facts as pleaded, dismissal is appropriate. See Id.; see also Hogan v. Eastern Enterprise/Boston Gas, 165 F. Supp.2d 55, 57 (D. Mass. 2001).

B. Defendant Fails to State A Claim for Abuse of Process

Ms. Cunningham's claim for abuse of process claim is wholly without merit. MSR has simply sued Ms. Cunningham for a debt that Ms. Cunningham and her husband have continually admitted that they owe. It simply cannot be an Abuse of Process to seek to collect a debt that MSR claims is owed by Ms. Cunningham and one she has admitted – *even before this Court* – that she owes to MSR. At the hearing before it on preliminary injunction, Ms. Cunningham's counsel stated:

> "Your Honor, **they** [Mr. Otus and Ms. Cunningham] acknowledge the existence of the debt, and **they** have made attempts to try and work out arrangements. . ."

See Preliminary Injunction Hearing Transcript, p. 8 attached to the accompanying memorandum of law as Exhibit 1. The Court is also encouraged to review Exhibits 20-26 of the Affidavit of Daniel Epstein in which Ms. Cunningham's prior counsel made similar representations on behalf of his clients acknowledging the existence of the debt and the Defendants' intent to repay it.

3

In any event, even if the Court ignored the extensive factual record in this matter as Defendants would like, Ms. Cunningham utterly fails to state a claim for abuse of process. In Massachusetts, the elements of an abuse of process claim are "(1) that process is used (2) for an ulterior or illegitimate purpose, (3) resulting in damage to the plaintiff." Refuse & Envt'l Sys., Inc. v. Indus. Servs. of Am., Inc., 932 F.2d 37, 41 (1st Cir.1991). "Abuse of process presupposes the use of legal action for an ulterior purpose, i.e., to achieve some end other than the apparent end of the litigation process which has been launched." Silvia v. Building Inspector of West Bridgewater, 35 Mass. App. Ct. 451, 453 (1993) (footnote omitted).

"The essence of this tort is the malicious use of legal process 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'" Carroll v. Gillespie, 14 Mass. App. Ct. 12, 26 (1982) (internal citations omitted). There is no ulterior purpose that could conceivably be asserted by Ms. Cunningham. MSR has merely sued to collect a debt – a debt acknowledged by both Defendants.

Even if Ms. Cunningham's latest argument is accurate – i.e. that the debt is owed by the company in which she was an officer and a major shareholder rather than by her directly – there is still no abuse of process. This would be true even if MSR had actual knowledge that its claim against Ms. Cunningham was groundless. There must also be proof of an ulterior motive. Ladd v. Polidoro, 424 Mass. 196, 200 (1997). The "ulterior or illegitimate purpose" alleged cannot – as here – simply be the defendant's use of the judicial process to pursue and fully litigate contractual questions forming the basis of the parties' dispute – i.e. whether the alleged corporation and not Ms. Cunningham was a part

of the joint venture. Gibbs v. Golden Eagle Credit Corp., 2004 WL 2302570 (D. Mass. 2004) (Woodlock, J.).

More to the point, Ms. Cunningham's only allegation in the Counterclaim that could reasonably read to support the "ulterior purpose" element of her claim is contained in Paragraph 13 and states:

> "MSR named Ms. Cunningham as a defendant for the ulterior purpose of obtaining prejudgment security against her which would not have been available against Mr. Otus."

As such, Ms. Cunningham admits that MSR merely sought to achieve an end (i.e. a property attachment) that is available to it as an end of the litigation process.

As set forth above, even if the claim against Ms. Cunningham is ultimately proven groundless, Ms. Cunningham does not have an abuse of process claim. Nonetheless, the Court should note that not only has this Court found that the claim has merit (and, therefore, the use of process in this matter is legitimate), but also this Court has found (by virtue of its issuance of a preliminary injunction against Ms. Cunningham) that there is *a likelihood of success on the merits* of MSR's claims against Ms. Cunningham. As set forth above, this finding was made after Ms. Cunningham's counsel *admitted* she owed the debt. Finally, the Court should note that Ms. Cunningham has already raised the corporate veil arguments set forth in her Counterclaim in a Motion to Dismiss – claiming that only her husband and not she should be a defendant in this suit. Those arguments also proved fruitless and were denied by this Court.

C. Rule 11 and Chapter 231 § 6F Requests Should Be Stricken

In light of the foregoing – perhaps most importantly the finding of a likelihood of success of MSR's claims versus Ms. Cunningham – Ms. Cunningham's gratuitous

request for attorney's fees and costs under Rule 11 and G.L. c. 231 § 6F are particularly heinous and appear aimed at leveraging some type of acquiescence from MSR. Rule 11 was not adopted to be threateningly added to pleadings and these portions of the Answer and Counterclaim should be stricken.

Rule 11 provides, among other things, that a party or attorney may be sanctioned if the claims presented are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" or if the facts alleged lack evidentiary support. Sanctions will not be imposed pursuant to Rule 11 if the plaintiff's actions, in pursuing its claims, were objectively reasonable under the circumstances. Smith v. Robertshaw Controls Co, 2004 WL 1260097 (D. Mass. 2004) (O'Toole, J.); citing Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 758 (1st Cir.1988). It is impossible to imagine that it could be found that MSR's claims were not objectively reasonable where Ms. Cunningham has acknowledged the existence of a personal debt to MSR.

Similarly, Mass. Gen. L. ch. 231, § 6F permits an award of costs and fees if "all or substantially all of the claims ... were wholly insubstantial, frivolous and not advanced in good faith." As used in § 6F "[g]ood faith implies an absence of malice, an absence of design to defraud or to seek an unconscionable advantage." Robertshaw, 2004 WL 1260097; citing Hahn v. Planning Bd. of Stoughton, 403 Mass. 332, 529 N.E.2d 1334, 1338 (Mass. 1988). Malice cannot be inferred by MSR's mere temerity in bringing a collection action on a debt Ms. Cunningham admits she owes.

Even if Ms. Cunningham could prove her current position – that she only promised to repay the debt on a moral basis, not via a contractual obligation – MSR's

6

claim would still not be considered "frivolous." Although the common goal of Rule 11 and § 6F is to deter frivolous litigation, that goal is not intended to be achieved at the expense of chilling zealous advocacy. Robertshaw, 2004 WL 1260097; citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). Ms. Cunningham's aggressive use of Rule 11 and § 6F appear aimed at just that – chilling MSR's resolve to pursue the money stolen from it. In any event, as long as MSR's actions were objectively reasonable in bringing suit versus Ms. Cunningham – which they clearly were – its claims cannot be deemed frivolous even if they are not ultimately deemed meritorious. Robertshaw, 2004 WL 1260097.

## III. Conclusion

For the foregoing reasons, Plaintiff requests that this Honorable Court Dismiss Ms. Cunningham's Counterclaim in its entirety and strike the requests for Rule 11 and § 6F sanctions.

Respectfully submitted,

**MICRO SIGNAL RESEARCH, INC.,**

By its attorney,

Timothy J. Perry (BBO #631397)
PRETI FLAHERTY LLP
114 State Street, Second Floor
Boston, MA 02109
(617) 742-9012
fax (617) 742-9013

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon all counsel of record by placing same addressed to said counsel in First Class U.S. Mail, pre-paid.

Dated: April 13, 2005

_____
Timothy J. Perry

Page 1

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

MICRO SIGNAL RESEARCH, INC.,       )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 ) Civil Action
                                    ) No. 04-12300-EFH
                                    )
JURI OTUS and MAUREEN CUNNINGHAM,   )
                                    )
        Defendants.                 )


TRANSCRIPT OF MOTION FOR TEMPORARY RESTRAINING ORDER


BEFORE THE HONORABLE EDWARD F. HARRINGTON
UNITED STATES SENIOR DISTRICT JUDGE


United States District Court
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
November 4, 2004
2:00 p.m.


* * * * *


SHELLY M. KILLIAN, CM
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 3510
Boston, MA 02210
(617) 737-7117

241

1   APPEARANCES:

2   For the Plaintiff:

3   Timothy J. Perry, Esq.
    Perry, Krumsiek & Wayland P.A.
4   114 State Street, Suite 200
    Boston, Massachusetts   02109
5   (617) 742-9012

6   For the Defendants:

7   Michael C. Fee, Esq.
    Fee, Rosse & Lanz, P.C.
8   321 Boston Post Road
    Sudbury, Massachusetts   01776
9   (978) 440-7000

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

242

2835691d-eecc-4cea-851a-a53a1ca3a830

```
                                                              Page 3
 1                   P R O C E E D I N G S
 2              (The following proceedings were held in open court
 3    before the Honorable Edward F. Harrington, United States Senior
 4    District Judge, United States District Court, District of
 5    Massachusetts, at the John J. Moakley United States Courthouse,
 6    1 Courthouse Way, Boston, Massachusetts, on November 4, 2004.)
 7              THE CLERK:  All rise for the Honorable Court.
 8    Court is in session.  You may be seated.  Civil Action
 9    04-12300, Micro Signal versus N. Otis, et al.
10              THE COURT:  I'll hear from the plaintiffs.
11              MR. PERRY:  Thank you, your Honor.  My name is
12    Timothy Perry.  I represent the plaintiff, Daniel Epstein, who
13    is the president of Micro Signal Research, Inc.  He's here in
14    the courtroom today, your Honor.
15              Basically what brings us here today, your Honor, is
16    a string of broken promises by Mr. Otus and his wife, Maureen
17    Cunningham, who are the named defendants in this suit, over the
18    past year.  And what happened was, in essence, Mr. Epstein and
19    his company were swindled in this case to the tune of
20    $210,000.
21              In the fall of 2003, your Honor, Mr. Epstein, his
22    company, who had done some business with this man Nuri Otus in
23    the past, who basically ran an auction web sight called
24    AuctioNet.com at the time, your Honor, he was this in the
25    business of buying used equipment and selling it on the
```

243

1   internet and otherwise at auction to make a profit.
2   Mr. Epstein's company had done that from Mr. Otus' entities in
3   the past. And Mr. Otus said I have located a lot of equipment,
4   used equipment in Texas, and it's an opportunity for the two of
5   us to form a joint venture, I need some cash up front but it's
6   an opportunity for us to form a joint venture, purchase this
7   equipment. And then Mr. Otus and his wife as auctioneers would
8   auction that equipment and split the profits.
9           Mr. Epstein's company in the Fall of 2003 based
10  upon these representations, and they're contained in a series
11  of e-mails I've attached to Mr. Epstein's affidavit, your
12  Honor, sent the $210,000 to Mr. Otus. At the time they were
13  called AuctioNet. As I said, he sent it to their bank out in
14  California.
15          Over the next three or four months, Mr. Otus began
16  to duck Micro Signal Research, Mr. Epstein. He couldn't
17  produce evidence that he had purchased the equipment, certainly
18  had never sold the equipment. And then, in fact, when
19  Mr. Epstein told Mr. Otus I have some purchasers for portions
20  of the equipment, I need those portions so I could resell them
21  at a good price, he couldn't produce any of the equipment.
22          In the end, Mr. Epstein, concerned about his
23  investment in this so-called joint venture, flew out to
24  California where the equipment was supposed to be kept. He was
25  shocked to learn, first of all, he had been given a wrong

244

Page 5

address. He showed up at an office complex, and there was no one there. Then, you know, fortuitously he drove around the block and saw the company that was supposed to handle the equipment. It was called Data Return. He entered it and again was shocked to find out nobody knew what he was he was talking about.

The people at Data Return said Mr. Otus never bought that equipment, it's in Texas. And so they -- I'm sorry, it had been purchased by somebody else. This was several months of Mr. Otus saying we have the equipment, it's going to be resold. So he called the people in Texas and they said, yeah, we sold that to somebody else months ago. And so Mr. Epstein said that's it, I'm going to the authorities, I'm going to go to the District Attorney or the U.S. Attorney, my money's been stolen.

At that point Mr. Otus and his counsel, and this is about March, April or May of 2004, began a campaign of saying refrain from doing that, we admit we made a mistake, we never purchased the equipment, we owe you the money. We have a series of letters attached to the affidavit acknowledging that --

THE COURT: Let me ask you, according to the argument -- 200 what is it?

MR. PERRY: 210 plus interest.

THE COURT: Why don't you pay the man?

245

Page 6

1   MR. FEE: Well, your Honor, the company does
2   acknowledge the existence of the debt. AuctioNet --
3   THE COURT: Then why don't they pay him?
4   MR. FEE: This company hasn't been sued, your
5   Honor. The suit has been brought against the individual
6   shareholders.
7   THE COURT: Who owns the company?
8   MR. FEE: AuctioNet is owned by a variety of
9   shareholders, two of whom are my clients. And although my
10  brother stated an excellent case --
11  THE COURT: Let me ask you, why haven't you sued
12  the corporation?
13  MR. PERRY: Your Honor, there was never a
14  corporation. And indeed --
15  THE COURT: I thought during the course of your
16  argument you mentioned they were operating under some name.
17  MR. PERRY: They had a web site, your Honor. We
18  found out that it was never incorporated. But even more
19  importantly, your Honor, until today, I never knew and we never
20  knew the last six months they acknowledged the debt
21  individually. And, in fact, they said they were going to pay
22  us. These are their attorney's letters, Mr. Otus' letters.
23  They were going to repay us $250,000 for our troubles -- again,
24  all attached to this affidavit -- individually by --
25  THE COURT: The two main defendants, what is their

246

Page 7

1  relationship to this company or noncompany?
2          MR. PERRY: They're husband-and-wife team, your
3  Honor.
4          THE COURT: How much do they own of the company, if
5  there is a company?
6          MR. PERRY: They admit it's 100 percent here. It's
7  the first I've ever heard --
8          THE COURT: Why don't you pay them the money?
9          MR. FEE: Forty-four percent, your Honor.
10         THE COURT: Were they ducking behind this corporate
11 veil?
12         MR. FEE: Negative, your Honor. That's not what's
13 happening.
14         THE COURT: Why don't they come up with the money?
15 He just indicated that he sent you $210,000. Is that what it
16 is?
17         MR. PERRY: Yes.
18         THE COURT: And you've been stalling him for eight
19 months. Why don't they pay him?
20         MR. FEE: Well, first of all, your Honor, I --
21         THE COURT: I'm not talking to you. I'm talking
22 about your clients.
23         MR. FEE: Well, my clients have made numerous
24 efforts to try and settling the matter.
25         THE COURT: Never mind settle the matter. Why

247

Page 8

1   don't they come up with the money?
2           MR. FEE:  Your Honor, they acknowledge the
    existence of the debt, and they have made attempts to try and
    work out arrangements whereby --
5           THE COURT:  When are they going to come up with the
    money?
7           MR. FEE:  I don't know the answer to that, your
    Honor.
9           THE COURT:  Anything further?
10          MR. PERRY:  I just have one thing, your Honor.  If
    you look at --
12          THE COURT:  Have you gone to the authorities?
13          MR. PERRY:  Not yet.  We were trying to --
14          THE COURT:  Let me tell you, you should.  You
    should.  This looks like a fraud or a scam.
16          MR. PERRY:  It is.
17          THE COURT:  And these people should be arrested.
18          MR. PERRY:  I agree, your Honor.  Because the
    affidavit of this gentleman --
20          THE COURT:  They should be arrested.
21          MR. PERRY:  I agree.  The affidavit of this
    gentleman filed with the Court today, your Honor, he -- where
    the first time he raises the corporate veil, after telling us
    he was going to refinance his home -- he and his wife were
    going to refinance their home and repay us, he sent us -- he

248

1  had the gall to send us the refinance documents saying, oh,
2  it's coming, it's coming.
3      He raises this corporate veil for the first time
4  today saying they don't really have this company. We have an
5  e-mail that we received last week where he and his wife say
6  this company is -- we just opened up under a new entity, it's
7  my wife and I. Nothing about a corporation or anything like
8  that. And he has the gall to say in his affidavit to you here
9  today, your Honor, that somehow there's this extensive
10 corporation.
11     THE COURT: Who signed the affidavit?
12     MR. PERRY: Mr. Otus.
13     THE COURT: Let me tell you, this money isn't paid
14 for, if this man doesn't receive his money fast, I'll send this
15 matter to the U.S. Attorney to tell him to initiate a
16 perjury -- has this been filed in the Court, the affidavit?
17     MR. PERRY: I think he filed it today, your Honor.
18     MR. FEE: The affidavit's been filed, your Honor.
19     THE COURT: Let me tell you, I'll go to the U.S.
20 Attorney and tell him to open up a criminal investigation on
21 the charge of perjury.
22     MR. FEE: Your Honor, if I may --
23     THE COURT: I don't want to hear any more. Let me
24 tell you, when people take that type of money and don't pay
25 back and then file an affidavit, they better do it.

249

Page 10

1       THE CLERK:  All rise.  Court is adjourned.

2       (Adjourned at 2:12 p.m.)

3

4                   i i i i i i

5                   CERTIFICATION

6       I certify that the foregoing is a correct

7  transcript of the record of proceedings in the above-entitled

8  matter to the best of my skill and ability.

9

10

11

12  _____          _____

13  Shelly M. Killian                          Date

14  Official Court Reporter