FILED
IN CLERK'S OFFICE

2005 NOV 30  P 4: 43

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICRO SIGNAL RESEARCH, INC. | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO.: 0412300-EFH |
| NURI OTUS and MAUREEN CUNNINGHAM, | ) |
| Defendants, | ) |
| CUPERTINO NATIONAL BANK & TRUST, | ) |
| Trustee Process Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND VI OF PLAINTIFF'S COMPLAINT**

**I.    Introduction**

In this matter, Plaintiff seeks to recover $210,000 converted by fraud by the Defendants. In the fall of 2003, Defendant Otus, who was then operating a website with his wife they called AuctioNet, approached Plaintiff and convinced it to provide $210,000 for a so-called joint venture to buy used equipment to be re-sold by the parties at a profit. Plaintiff wired $210,000 to facilitate the deal. Defendants never purchased the equipment – which Plaintiff found out only when its President traveled to California to view the equipment. At that point, Plaintiff only refrained from going to the authorities or taking other legal action because Defendants, through their attorney, admitted their wrongdoing and promised to re-pay the money.

Communications affirming the debt and promising to make arrangements to repay the money continued from counsel for Defendants from June 2004 through even a

representation to *this* Court at the motion for preliminary injunction in this matter. At the motion hearing, Defendants' present counsel stated: **"Your Honor, *they* [the Defendants] acknowledge the existence of the debt, and *they* have made attempts to try and work out arrangements..."**

Nonetheless, Defendants have taken several evasive actions to avoid repayment – including closing out their bank accounts, shutting down their old web site and selling merchandise under new web sites, contesting this Court's pre-judgment security rulings in the First Circuit and in California, and threatening bankruptcy while settling claims with other apparent victims of the same type of scam perpetrated against this Plaintiff. Since the existence of the debt and Defendants' liability thereon cannot be contested, it is appropriate to enter summary judgment on the conversion and Chapter 93A counts forthwith.

**II.     Legal Standards Governing Summary Judgment**

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact remain. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. *Id.* In making its determination, the court must view all evidence in the light most favorable to the nonmovant and is to draw all reasonable inferences in favor of the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992); *Mediacom Corp. v. Rates Tech., Inc.*, 4 F.Supp.2d 17, 33 (D. Mass.1998). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is therefore entitled to judgment as matter of law. *Anderson*, 477 U.S. at 250; *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322- 24 (1986). If the movant satisfies this burden, the nonmovant must proffer evidence demonstrating the existence of a genuine issue of material fact. *Donovan v. Agnew,* 712 F.2d 1509, 1516 (1st Cir. 1983). The non-moving party may not rest upon mere allegations or denials; rather it must set forth specific facts showing that a genuine issue exists. *Anderson,* 477 U.S. at 250; *Donovan,* 712 F.2d at 1516; Fed.R.Civ.P. 56(e).

### III.   Count I: The Conversion Claim

In order to establish a claim for conversion under Massachusetts law, plaintiff must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused. *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d 90, 95 (1st Cir. 1993).

Each of the four elements of conversion have been easily established in the instant case. The first two factors (i.e. control or dominion over personal property of another) requires "intentional deprivation of property from the rightful owner." *Kelley v. LaForce,* 288 F.3d 1, 12 (1st Cir. 2002). Here, the Defendants intended to, and did, obtain control of the funds (the $210,000 wire transfer) of MSR (the property's rightfull owner). That fact is proven by the e-mails attached to the Epstein Affidavit as Exhibits 4-5 and by the wire transfer confirmation attached to the Epstein Affidavit as Exhibits 6-7. The third element, MSR's damages, are also thusly proven (i.e. MSR is obviously

3

harmed by the loss of the $210,000 it wired). Regarding the fourth element, Defendants have not disputed a failure to repay the debt despite repeated demands for repayment. *See* Undisputed Facts, Par. 51.

## IV.   Count VI: The Chapter 93A Claim

Defendants' conduct, which included (1) a fraudulent inducement of a $210,000 payment from MSR (2) an extended scam that included a fictitious purchase of equipment and (3) leveraging MSR into acquiescence on its claims with false statements from their counsel that they intended to repay the debt, arises to the level of unfairness and deceit required to support a Chapter 93A claim. *See Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504, 396 N.E. 2d 149, 153 (1979) (misrepresentation in the common law sense of the term constituted violation of Chapter 93A); *Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10 (1st Cir. 1985) (refusal to pay for goods sold and delivered unless plaintiff agreed to ship additional goods was willful and knowing unfair practice); *Arthur D. Little International, Inc. v. Dooyang Corp.*, 979 F. Supp. 919 (D. Mass. 1997) (corporation's sue-me strategy to avoid payment of known obligations to force price concessions violated the statute); *The Community Builders, Inc. v. Indian Motorcycle Assocs., Inc.*, 44 Mass. App. Ct. 537, 557-58, 692 N.E.2d 964, 977-78 (1998) (entry into agreement with no intent to pay, extortion-like withholding of payments, and "stringing along" to coerce acquiescence violated statute). As such, judgment must enter against both Defendants on Count VI with and award of interest, costs, attorney's fees and multiple damages.

V.  **Defendants' Belated Corporate Veil Argument Fails**

Until this lawsuit, Defendants never informed MSR of the existence of Realm Connect much less contended that the debt was allegedly owed by Realm Connect rather than by themselves individually. *See* Undisputed Material facts, Par. 5, 9, 12, 28, and 51. For instance, the e-mails sent by Mr. Otus regarding the exchange of the cash came under the heading of his website ("Auctionet") and did not identify any corporate entity, much less Realm Connect. Quite to the contrary, *both* Defendants accepted personal liability on the debt and even offered to re-finance their personal home in order to subsidize the repayment of the debt. *Id.*, Par. 36-46. Moreover, for several months after the scam was uncovered, Defendants – through their counsel – acknowledged the debt on behalf of the individual Defendants and never raised a corporate veil argument. *Id.* Nonetheless, even if such corporate veil arguments had been properly raised, Defendants could not avoid personal liability in this matter for several reasons.

A.  **Fraud By Corporate Officers Makes Them Personally Liable**

Since Defendants have gone to great lengths to defeat efforts to collect this debt, the Court has the benefit of an extensive record in this case, including a full review of the facts by the First Circuit after the Defendants' appeal of this Court's pre-trial security orders. The First Circuit rejected the faulty corporate veil argument outright. The Court found "patent evidence of personal liability." *Micro Signal Research, Inc. v. Otus and Cunningham*, United States Court of Appeals for the First Circuit, No. 04-2563 (2005) (attached to the Second Epstein Aff. as Exhibit 5), p. 8.

> As to Otus, the [corporate veil] argument is hopeless. The facts…strongly suggest fraud on Otus's part. Even if Auctionet or Realm was a legitimate business venture and Otus was merely acting on its behalf, fraud by a

5

corporate officer normally makes him independently liable without any need to pierce the corporate veil.

*Id.*, p. 4-5; *citing Bond Leather Co. v. Q.T. Shoe Mfg.Co.*, 764 F.2d 928, 938 (1st. Cir. 1985); *Townsends, Inc. v. Beaupre*, 716 N.E.2d 160, 164 (Mass. App. Ct. 199); *Wyatt v. Union Mortgage Co.*, 598 P.2d 45, 52 (Cal. 1979); *A-1 Check Cashing Serv., Inc. v. Goodman*, 538 N.Y.S.2d 830, 831 (App. Div. 1989). Furthermore, Ms. Cunningham's personal liability is proven via admissions of same by her counsel both before the lawsuit began and in open Court. *Fraser and Wise, P.C. v. Primarily Primates, Inc.*, 966 F. Supp. 63, 75 (D. Mass. 1996) ("Stipulations by counsel made in open court … constitute "admissions on file" within the meaning of Rule 56(c)"); *citing* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722 (1983) ("admissions need not be pursuant to Rule 36" but may occur during pretrial conferences, oral argument on the motion, joint statements or stipulations); 6 James Wm. Moore, *Moore's Federal Practice* ¶ 56.11[1.-5] (1996) (admissions, for Rule 56(c) purposes, may be made at pretrial conference). At the motion hearing in this matter, Defendants' counsel stated:

> **Your Honor, *they* [the Defendants] acknowledge the existence of the debt, and *they* have made attempts to try and work out arrangements…**

The First Circuit found this admission persuasive. *Micro Signal Research, Inc. v. Otus and Cunningham*, No. 04-2563 (attached to the Second Epstein Aff. as Exhibit 5), p. 9 (the "admission of counsel of his clients' personal liability in open Court [was] ample basis for determining that [MSR] is likely to prevail on the merits [against both Otus and Cunningham]"). The First Circuit noted that defense counsel had every opportunity to contest that the admission was only intended for Otus and not

6

Cunningham, but failed to do so – even in their reply brief to the Appeals Court. "If there was some doubt about [the admission's meaning] (e.g. that counsel was only intending to admit that Otus was liable), we could expect counsel to have said so in his reply brief, since Micro's answering brief (like the district judge) relies so squarely on defense counsel's admission as binding on both defendants. Nothing of the kind is claimed." *Id.*

Worse, in an attempt to conjure the corporate veil defense as this case has proceeded, Ms. Cunningham appears to have lied under oath. In answers to interrogatories, Ms. Cunningham avers that she "was never involved with any transactions related to buying or selling assets" for Realm Connect. Undisputed Material facts, Par. 52. Yet, it is apparent from the documents obtained to date that Ms. Cunningham executed checks on behalf of Realm Connect that related to buying and selling substantial assets. *Id.*

### B.  Failure to Disclose A Supposed Agency Relationship Creates Personally Liability for Both Defendants

Defendants' failure to disclose their supposed agency relationship with Realm Connect likewise destroys any effort to avoid personal liability. *See Perotta ex rel. Tory Pines Enterprise Realty Trust v. Summit Home Loans, Inc.*, 2005 WL 352859 (D. Mass. 2005).

> The duty rests upon the agent, if he would avoid personal liability, to disclose his agency, and not upon others to discover it. It is not, therefore, enough that the other party has the means of ascertaining the name of the principal; the agent must either bring to him actual knowledge or, what is the same thing, that which to a reasonable man is equivalent to knowledge or the agent will be bound. There is no hardship to the agent in this rule, as he always has it in his power to relieve himself from personal liability by fully disclosing his principal and contracting only in the latter's name. If

7

> he does not do this, it may well be presumed that he intended to make himself personally responsible.

*Id.*, citing 1 *Mechem on Agency* § 1413 (2d ed.1914). "Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract." *Id.* at § 321. As comment (a) to § 321 and the accompanying illustrations make clear, it is not sufficient for the agent to simply disclose that he is acting on behalf of another, he must provide sufficient information about the principal so that its identity can be readily distinguished. *Id.*

In this case, Defendants never conducted business with MSR in the name of Realm Connect. Undisputed Material facts, Par. 5, 9, 12, 28, and 51. At most, Defendants simply revealed an unincorporated trade name they used ("auctionet") in some, but not all, of the e-mails between the parties. *Id.* Although Defendants now claim there had once been an entity named Auctionet.com, *Inc.*, Defendants admit that that entity ceased to exist in 2001. *Id.*, Par. 6. In any event, use of a trade name is not a sufficient disclosure of a principal's identity unless in the circumstances the trade name would have no tendency to mislead or deceive. *Atlantic Salmon A/S v. Curran*, 32 Mass. App. Ct. 488, 491, 591 N.E.2d 206 (1992). By using the name AuctioNet, rather than the purported corporate entity, Realm Connect, Defendants were purposefully misleading MSR as to the involvement of the defunct corporation they now hope to convince this Court is responsible for their conversion (Realm Connect).

### C.  Even if A Corporate Veil Could Be Raised, The Facts Here Would Require Piercing of the Veil

Even assuming the Defendants could argue that Realm Connect was the entity with whom MSR contracted, which proposition finds no support in the uncontested

facts, it is well-settled that a corporate veil may be pierced where "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud." *U.S. v. Bestfoods,* 524 U.S. 51, 62, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). There is no doubt here that Defendants in this case engaged in the type of fraud that allows, even mandates, piercing the corporate veil.

In *U.S. v. Bridle Path Enterprises, Inc.,* 2001 WL 1688911 (D. Mass. 2001), the government sued individuals where the corporation which they operated was defunct and it appeared that the corporation had little or no remaining assets and no income with which to pay any debts it owed. A similar situation that Realm Connect is purported to be in by Defendants. The Court considered whether the individuals should be personally liable for the corporation's debt. The Court stated that "[f]ederal law provides no single 'litmus' test for determining when it is appropriate to pierce the corporate veil." *Id.;* citing *Brotherhood of Locomotive Eng'rs v. Springfield Terminal Ry. Co.,* 210 F.3d 18, 26 (1st Cir.2000). Instead, federal law is "founded only on the broad principle that a corporate entity may be disregarded in the interests of public convenience, fairness and equity." *Id.*

MSR concedes that corporation "piercing is the exception, not the rule," but it is clear that, if this Court chooses to conduct a corporate veil analysis, the "high standard" required for disregarding the corporate form has been met in this case. *See Commonwealth Aluminum Corp. v. Baldwin Corp.,* 980 F. Supp. 598, 605 (D. Mass. 1997); *citing Amer. Home Assurance Co. v. Sport Maska, Inc.,* 808 F. Supp. 67, 73 (D. Mass.1992); *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 619 (1968). Massachusetts courts have pierced the corporate veil in two general

9

circumstances: (1) where there is active and direct participation by the representatives of the corporation exercising some form of pervasive control *and* there is some fraudulent or injurious consequence and (2) where there is serious ambiguity about the manner and capacity in which the respective representatives of the corporation are acting. *My Bread,* 353 Mass. at 619.

Both are met in this case. In convincing MSR to send money to them and then to refrain from seeking the assistance of the authorities in collecting the converted money, Defendants took *the* active and pervasive role in the scam. Indeed, Realm Connect appears to have taken no role in either the deal with MSR or the continuing fraud after the money was converted. Importantly, neither defendants nor their counsel ever mentioned that the debt might be owed by Realm Connect or any other corporate entity. Instead, both Defendants actively defrauded MSR by accepting the debt as their own and instigating forbearance on collection by promising to refinance their home to repay their debt. It was only when Defendants were personally sued on the debt that they mentioned a potential corporate defendant – a clear effort to fraudulently avoid a debt they repeatedly acknowledged. Under these circumstances, it is clear that neither Defendant is entitled to raise a corporate veil defense.

## VI. Conclusion

For the foregoing reasons, Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff on Count I in the amount of $210,000 plus costs and interest and in favor of Plaintiff on Count VI in the amount of $210,000 plus costs, interest, treble damages and attorneys fees pursuant to Massachusetts General Laws, Chapter 93A.

Respectfully submitted,

**MICRO SIGNAL RESEARCH, INC.,**

By its attorneys,

_____
Timothy J. Perry (BBO# 631397)
PRETI, FLAHERTY, BELIVEAU
    PACHIOS & HALEY LLP
10 High Street, Suite 502
Boston, MA  02110
(617) 226-3800
(617) 226-3801

Dated: November 30, 2005

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document to be served this date upon counsel of record by causing same to be placed in the United States Mail, First Class, postage pre-paid.

Dated: November 30, 2005

_____
Timothy J. Perry