UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICRO SIGNAL RESEARCH, INC. | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO.: 0412300-EFH |
| NURI OTUS and MAUREEN CUNNINGHAM, | ) |
| Defendants, | ) |
| CUPERTINO NATIONAL BANK & TRUST, | ) |
| Trustee Process Defendant. | ) |

### Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts

1.   MSR is a corporation registered to do business in the Commonwealth of Massachusetts. Affidavit of Daniel Epstein ("Epstein Aff."), Par. 1.[1]

2.   Defendant Nuri Otus ("Mr. Otus") ran a website known as Auctionet ("Auctionet") which purported to have offices at 1204 Middlefield Road, Suite 2C, Redwood City, CA 94063, and a P.O. Box 631, Burlingame, CA 94011. *Id.*, Par. 2.

3.   Defendant Maureen Cunningham ("Ms. Cunningham") is Mr. Otus' wife and participated in running AuctioNet. *Id.*, Par. 3.

4.   It was represented to MSR that AuctioNet engaged in the business of buying and selling, privately and at auction, used equipment. Prior to September 2003, MSR had bought equipment both directly and at auction from AuctioNet. *Id.*, Par. 5.

---

[1] The original Epstein Aff. with exhibits was previously filed with the Court in support of motions for preliminary injunction and attachments (which were allowed).

5. In or about September 2003, Mr. Otus held himself out as "owner" and "auctioneer" of AuctioNet. *Id.*, Par. 5. MSR understood that the operation was run as a husband-wife team – with Ms. Cunningham acting a chief financial officer. *Id.*, Par. 3. Neither Mr. Otus nor Ms. Cunningham had ever identified a corporate entity as the entity with which MSR was conducting business. Epstein Aff., Exhibits 2, 3, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 20, 22, 23, 24, 25, and 26.

6. Defendants now assert that there had previously been a corporate entity called AuctioNet.com, Inc. Affidavit of Nuri Otus ("Otus Aff."), Par. 2.[2] Mr. Otus represents that he owned 1,890,000 shares of that company's 6,577,333 shares of stock and that Ms. Cunningham owned 2,310,000 shares of that company's stock. *Id.*, Exhibit 3. Defendants now admit that by the time the deal at issue in this case was negotiated (fall 2003), AuctioNet.com, Inc. no longer existed. *Id.*, Par. 6. AuctioNet.com, Inc. was purportedly "merged into" Realm Connect Corporation ("Realm Connect") in 2001. *Id.* Mr. Otus and Ms. Cunningham owned 100% of the Preferred Stock of Realm Connect. *Id.*, Par. 7.

7. In or about late October 2003, Mr. Otus proposed a joint business venture with MSR in which certain equipment would be purchased and later sold at a profit by the parties. Epstein Aff., Par. 7.

8. MSR viewed a portion of the equipment proposed to be acquired in Dallas, Texas in or around early November 2003. The remaining equipment was purported to be in Pleasanton, California. Epstein Aff., Par. 7.

---

[2] The Otus Aff. was previously filed in opposition to Plaintiff's Motions for Temporary Restraining Order, Trustee Process Attachment and Real Estate Attachment.

9. The deal between the parties is reflected in a series of e-mails exchanged from about October 24, 2003 to November 11, 2003. Epstein Aff., Exhibit 2.

10. In order to induce MSR to enter the joint venture, MSR was provided a list of the equipment that was to be purchased and re-sold. Epstein Aff., Exhibit 3.

11. On or about November 10, 2003, MSR received an e-mail instructing it to wire $210,000.00 to the Cupertino National Bank & Trust, 3 Palo Alto Square, Suite 150, Palo Alto, California, payable to AuctioNet.com, 1204 Middlefield Road, Redwood City, California, with a reference of "Data Return JV", a bank routing number of 121151152, and an account number 003110397. Epstein Aff., Exhibit 4.

12. No mention was made that any formal corporate entity, including Realm Connect, was involved. *Id.*

13. In a return email message, MSR advised that it was wiring the $210,000.00 "today for [MSR's] half share in the Data-Return deal on the spread sheets." Epstein Aff., Exhibit 5.

14. On November 12, 2003, MSR wired $210,000.00 to the account requested. Epstein Aff., Exhibit 6.

15. On November 12, 2003, MSR sent an email confirming that the wire had been completed. Epstein Aff., Exhibit 7.

16. From November 12, 2003 forward, it was continually represented to MSR that an agreement to buy the contemplated equipment had been secured and that MSR's cash was held in escrow in order to facilitate that purchase. Epstein Aff., Par. 15. MSR was also advised that there were so-called deals "in the works" to sell the equipment at a profit. Epstein Aff., Exhibit 8.

17.     Despite these representations, neither Mr. Otus nor Ms. Cunningham ever actually purchased the equipment. Epstein Aff., Par. 15.

18.     From about December 2003 forward, MSR was unable to either get an accounting on the purported deal or obtain a return of its money. Epstein Aff., Par. 15.

19.     Frustrated, MSR requested a return the $210,000.00 on or about December 21, 2003. MSR did not receive a response. Epstein Aff., Par. 16.

20.     On December 28, 2003, MSR sent another email requesting the wire transfer.  Epstein Aff., Exhibit 9.

21.     Thereafter, MSR was provided several excuses for the failure to wire the money back to MSR – each of which turned out to be a misrepresentation. On one occasion, Mr. Otus even used the excused that his mother had fallen seriously ill. Epstein Aff., Par. 18.

22.     By January 23, 2004, MSR scheduled a trip to California to examine the portion of the equipment that was supposed to be held in Pleasanton, California. At that time, however, MSR was not given an address where it could view the equipment. Epstein Aff., Exhibit 11.

23.     On February 4, 2004, at approximately 1:20 a.m., after months of trying to ascertain a straight answer, MSR wrote the following email:

> Nuri, I can't believe that I have to write an email like this but enough is enough. YOUR NOT A 5 YEAR OLD. I have been very patient for months now and don't need to be jerked around anymore. I am sorry about your mother, about your dog, about your kids practice and try outs, and about your birthday. Business is business and it is time to take care of it. It is just plain inconsiderate that in 3 months you have not sent me the address of where I need to go Friday, I have asked and reminded you at least 10 times. You have had time to send me emails saying you will call, with new equipment lists to look at but no address. I have postponed my plans, re-adjusted my schedule, my

> business, my vacation, my oral surgery, fucked up my accounting and had me make reservations at least 4 times now. You have held on to my 210K for 3 months. THE answer is not to give me my money back but to take care of business and go do what you have to do. Times up. I don't want to discuss this again. Send me the address in Pleasanton and the contact person. Go to Texas and get it done."

Epstein Aff., Exhibit 12.

24. On Wednesday, February 4, 2004, Mr. Otus simply responded:

I NEVER check this email, so do not reply to this email address. I cannot access the phone numbers because exchange is down. I have been unable to access email since 5 or so yesterday afternoon. Sorry for the delay. Will call you in around 20 minutes. 5557 Gilbralter Dr., Pleasantan, CA, Cory Silvers, 3239 Irving Road, Dallas Tx 75247, James Roberson.

Epstein Aff., Exhibit 12. MSR later found out that several items in this e-mail were inaccurate. First, the address in Pleasanton, California was wrong. Second, the contact person in California was incorrect. Finally, the contact person in Texas was incorrect. *Id.*, Par. 21.

25. By February 18, 2004, MSR believed, based upon the prior representations, that the equipment had been purchased. Epstein Aff., Par. 22. As a result, MSR attempted to find buyers for the equipment and continually requested that a certain product, SMI cards, be forwarded to it because MSR had a purchaser willing to buy those items. Epstein Aff., Exhibit 14. MSR received no affirmative response to those requests. *Id.*, Par. 22.

26. MSR also made repeated requests for the supposed contact person that was holding the California portion of the equipment, but MSR was not provided this information. Epstein Aff., Exhibit 15, and Par. 23.

27.  On March 9, 2004, MSR sent another e-mail requesting the telephone number of the contact person who was supposed to meet MSR to pick up the equipment, but again received no response. Epstein Aff., Exhibit 16, and Par. 24.

28.  In April 2004, concerned with these runaround tactics, MSR's President, Daniel Epstein, traveled to California to the address where the equipment was supposed to be stored. Epstein Aff., Par. 25. When MSR arrived at the address provided, the address was incorrect. Exasperated, Mr. Epstein rode around the block and fortuitously found a building with a sign outside with the company name ("Data Return") where the equipment was supposed to be held. *Id*. Mr. Epstein asked someone leaving the building if either Cory or Greg (the supposed contact persons) were there. *Id*. Mr. Epstein was told that these persons were in Texas, not at the California facility. *Id*. The person who assisted Mr. Epstein called the Texas office. *Id*. Mr. Epstein spoke to Cory, who had a different last name than the one provided by Mr. Otus. *Id*. Cory told Mr. Epstein that the equipment had actually been sold to another liquidator (i.e., not AuctioNet or its principals) four (4) months earlier (in November 2003) and that neither Mr. Otus nor AuctioNet had purchased or received the equipment. *Id*.

29.  Mr. Epstein immediately called Defendants' counsel David S. Greenseid, Esq. and advised him what he had just learned, and inquired about the whereabouts of MSR's $210,000. *Id*. After hearing the facts, Mr. Greenseid stated that he could no longer speak to Mr. Epstein. *Id*. Mr. Epstein then received a call from Mr. Otus. Mr. Otus apologized and stated that he had meant to advise MSR that he had never picked up the equipment. *Id*. Mr. Otus stated that the money would be returned and that he could

borrow the money from his mother to repay MSR. He requested that MSR not go to the authorities and rather allow him time to repay the money. *Id.*

30. On April 6, 2004, still having not received the return of the $210,000, MSR wrote to Mr. Otus and Ms. Cunningham stating, among other things that MSR had been defrauded and demanded the return of the $210,000.00. Epstein Aff., Exhibit 17.

31. From April 2004 to approximately June 2004, Defendants, through themselves and their attorney, David S. Greenseid, acknowledged that they owed MSR $210,000 and assured MSR that the money would be returned. Epstein Aff., Par. 27.

32. Importantly, and even though both Defendants are sophisticated business persons who were represented by counsel, neither they nor their counsel at any time prior to suit purported that the acknowledged debt belonged to anyone other than the Defendants individually. See Par. 5, above. Rather, Defendants admit that Realm Connect ceased doing business by July 2004. Otus Aff., Par. 10. Indeed, in a July 2004 letter to creditors of Realm Connect, Mr. Otus stated: "PLEASE TAKE NOTICE that effective June 30, 2004, Realm Connect Corporation, dba AuctioNet has ceased operations. All employees have been discharged…Accordingly, it is unlikely that there will be any distributions to Creditors and Equityholders." *Id.*, Exhibit 8. If Realm Connect was the debtor on MSR's $210,000, Defendants clearly would have sent that letter to MSR rather than the correspondence (cited below) in which they acknowledge the debt and promise to repay it through a re-finance of their personal residence -- after Realm Connect ceased operations.

33. On June 20, 2004, MSR sent a certified letter through its counsel demanding repayment of the $210,000.00, plus attorney's fees. Epstein Aff., Exhibit 18.

34.     On June 22, 2004, MSR's counsel forwarded the demand letter to Attorney Greenseid via facsimile. Epstein Aff., Exhibit 19.

35.     On June 22, 2004, Attorney Greenseid provided MSR's counsel with a letter, via facsimile, in which he stated that he was in receipt of the June 20, 2004 letter and that "[Mr. Otus] wants to reassure Mr. Epstein that it is his intention to repay him $210,000.00." Epstein Aff., Exhibit 20. Attorney Greenseid stated "Mr. Otus is in the final stages of refinancing his home after which he will be in a position to pay Mr. Epstein. I am informed that the funds are scheduled to become available within the first or second week after July 4—probably within the first week. As soon as the funds become available to Mr. Otus, it is his intention to forward $210,000.00 to Mr. Epstein." *Id.* Attorney Greenseid continued: "I understand Mr. Epstein's skepticism, but please advise him that every indication I have is that he will be paid within the time frame I have described. In our past discussions, I was only able to describe a process, not a time frame. Please advise whether Mr. Epstein would prefer a check or a wire transfer, and, if the latter, please give me wire transfer instructions." *Id.*

36.     Between June 22, 2004 and July 19, 2004, Attorney Greenseid and MSR's counsel engaged in several conversations regarding the failure to forward the $210,000. Epstein Aff., Par. 32.

37.     On July 19, 2004, Attorney Greenseid forwarded a second letter to MSR's counsel, via facsimile, in which he advised that the "funding of Mr. Otus' refinancing has been delayed by some documentation problems. These appear to be resolved now. Accompanying are a copy of the Mortgage Loan Commitment letter to Nuri Otus and a copy of a letter from his bank informing him of the correction of two errors in his credit

report. Barring any further delays, the funding of his loan and the payment to your client will take place within the next couple of weeks." Epstein Aff., Exhibit 22.

38. The accompanying documents were a letter to Mr. Otus and Ms. Cunningham from Wells Fargo Home Mortgage and a document entitled "Mortgage Loan Commitment" that identified the lender as Dana Capital Group, Inc. *Id.*

39. Based on these representations, MSR instructed its counsel to refrain from pursuing immediate legal action. Epstein Aff., Par. 35.

40. As of August 23, 2004, Defendants had still not provided MSR with any funds, despite repeated assurances made to MSR by Defendants' attorney, Mr. Greenseid. Epstein Aff., Par. 36.

41. On August 23, 2004, Attorney Greenseid directed another letter to MSR's counsel, via facsimile, stating that this "will confirm ou[r] telephone conversation of this date in which I advised you that on my return from my vacation on August 20, I was informed by Nuri Otus' wife [Ms. Cunningham] that the paperwork for the refinance of their home should be completed by the end of this week and funding should occur within a few days afterward." Epstein Aff., Exhibit 23.

42. As of September 10, 2004, MSR had still not received any funds and repeated calls to Mr. Otus' counsel from MSR's attorney were not returned. Epstein Aff., Par. 38.

43. On September 10, 2004, Attorney Greenseid wrote another letter to MSR's counsel, confirming a telephone conversation "in which I advised you that the information I received this morning is that the paperwork for my client's refinancing is imminent—by the end of the day or by Monday. Thereafter, the loan will be funded

within five (5) business days. Should there be any change in this information, I shall advise you forthwith. I will prepare a full and final release for your review and Mr. Epstein's signature setting forth my client's agreement to pay to Mr. Epstein the sum of $250,000 immediately upon his receipt of the funds. Please provide Mr. Epstein's account information so we can arrange a wire transfer of the funds. Please advise Mr. Epstein that my client is grateful for his forbearance and patience during these prolonged delays." Epstein Aff., Exhibit 24.

44. Attorney Greenseid directed a second letter to MSR's counsel, via facsimile, on September 10, 2004, advising that he spoke with his client's loan broker that day and the paperwork for refinancing was imminent—by the end of the day or by Monday. Epstein Aff., Exhibit 25.

45. By mid-September 2004, MSR had still received no funds and numerous telephone calls to Attorney Greenseid by MSR's counsel were not returned. Epstein Aff., Par. 41.

46. On October 1, 2004, Attorney Greenseid directed yet another facsimile to MSR's counsel, which stated: "Here is the long-awaited letter. Apparently the left hand does not know what the right hand is doing: the appraiser was saying he had not gotten paid and my client had to fax the canceled check from May. Call me if you questions." Epstein Aff., Exhibit 26.

47. As stated above, the foregoing correspondence from Defendants' counsel in which Defendants promise to repay the debt occurred *after* Realm Connect ceased operations on June 30, 2004. *See* Par. 28, above. Therefore, if the debt was owed by the

corporation, Defendants had no need to make representations that they acknowledged their debt and/or offer to personally repay it.

48.  On or about October 25, 2004, MSR received an e-mail from Mr. Otus who was then apparently conducting auctions (of the type of equipment that he had induced MSR to purchase) but under a new name: Asset Management Associates (amalimited.com). By that date, the so-called Auctionet.com web site was no longer accessible on the internet. Epstein Aff., Exhibit 28.

49.  At that time, Defendants also had an advertisement on "Craig's List" stating that they would purchase equipment from prospective sellers. Epstein Aff., Exhibit 29. The e-mail stated that cash would be paid for the equipment. *Id*.

50.  Plaintiff filed suit in this Court on October 28, 2004 against both Defendants. *See* Complaint. The Court held a hearing on Plaintiff's motion for preliminary injunction and attachments on November 4, 2004 at which counsel for both Defendants appeared, presented opposition papers and an affidavit, and argued on behalf of both Defendants. *See* November 4, 2004 Court Order.

51.  At the hearing on the preliminary relief requested, counsel for *both* Defendants stated:

> **Your Honor, *they* [the Defendants] acknowledge the existence of the debt, and *they* have made attempts to try and work out arrangements...**

Second Affidavit of Daniel Epstein ("Second Epstein Aff.") Exhibit 1 (Hearing Transcript, p. 7) (emphasis added).

52.  In attempting to raise a corporate veil argument in this matter, Ms. Cunningham appears to make misrepresentations under oath. In response to

Interrogatory No. 1, Ms. Cunningham states: "[I] was never involved with any transactions related to buying or selling assets [for Realm Connect]." *See* Interrogatory Answers attached to Second Epstein Aff., Exhibit 2. Yet, in documents subpoenaed from Realm Connect's bank for merely a four-month period, it appears clear that Ms. Cunningham had done so. The bank documents show that Ms. Cunningham appears to have signed several checks from October – December 2003 (the relevant period at issue in this case) – at least two of which appear to relate to buying and selling assets (a $210,000 check to Hughes, Hubbard & Reed, LLP with a memo note stating "Cyclelogic, Inc. Auction Settlement" and a $103,000 check to GGP Global LLC with a memo note stating "DeltaGen Commissions"). *Id.*, Exhibit 3. Two of the checks, in the amounts of $30,900 and $20,000, are made out to Auctionet - - a company which Defendants admit no longer existed by that time. *Id., See also* Par. 6 above.

53. Mr. Otus, through counsel, has recently indicated that he is on the verge of bankruptcy. Epstein Second Aff., Par. 4. Nonetheless, in recent months Mr. Otus and/or Realm Connect have apparently settled at least two other lawsuits in California with claims of fraud similar to the claims raised by MSR in this lawsuit. Epstein Second Aff., Exhibit 4.

54. The First Circuit affirmed the preliminary injunction entered by this court and dismissed Defendant's appeal of the attachments entered by this Court. Epstein Second Aff., Exhibit 5.

Respectfully submitted,

**MICRO SIGNAL RESEARCH, INC.,**

By its attorneys,

Dated: November 30, 2005

Timothy J. Perry (BBO# 631397)
PRETI, FLAHERTY, BELIVEAU
    PACHIOS & HALEY LLP
10 High Street, Suite 502
Boston, MA  02110
(617) 226-3800
(617) 226-3801

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document to be served this date upon counsel of record by causing same to be placed in the United States Mail, First Class, postage pre-paid.

Dated: November 30, 2005

Timothy J. Perry