UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

Case # 1:04-CV-12300-EFH

| | |
|---|---|
| MICRO SIGNAL RESEARCH, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| NURI OTUS and MAUREEN CUNNINGHAM, | ) |
| Defendants, | ) |
| and | ) |
| CUPERTINO NATIONAL BANK & TRUST, | ) |
| Trustee Defendant. | ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND VI OF PLAINTIFF'S COMPLAINT

Defendants Nuri Otus ("Mr. Otus") and Maureen Cunningham ("Ms. Cunningham") hereby oppose the motion of Micro Signal Research, Inc. for summary judgment ("Motion") on Counts I (Conversion) and VI (violation of Chapter 93A) because factual disputes preclude the grant of summary judgment in favor of plaintiff. In support, defendants rely upon the Affidavit of Nuri Otus, the Supplemental Affidavit of Nuri Otus, the Affidavit of Maureen Cunningham and the Affidavit of Michael C. Fee.

I. <u>Introduction</u>

This dispute arises out of an alleged agreement between plaintiff Micro Signal Research, Inc. ("MSR" or "plaintiff") and a corporate entity known as Realm Connect Corporation, d/b/a AuctioNet.com ("AuctioNet"). Plaintiff and AuctioNet entered into a failed business venture where sums were advanced by plaintiff and not repaid by AuctioNet. Notwithstanding the fact that all of plaintiff's communications regarding the transaction were with Mr. Otus in his capacity as CEO of AuctioNet, plaintiff commenced this action against Mr. Otus individually, and his wife, Ms. Cunningham.

II. <u>Plaintiff's Request for Summary Judgment Against Maureen Cunningham Must be Denied, and Summary Judgment in Favor of Maureen Cunningham Should Enter on Claims I and VI.</u>

a. <u>Count VI (Violation of Chapter 93A)</u>

In its Complaint, MSR alleges only that Ms. Cunningham ". . .[h]eld herself out as a vice president and chief financial officer of AuctioNet." The allegation has no basis in the record, and there are no specific allegations that Ms. Cunningham said, did, or represented anything which could be construed as the basis for MSR's claim for violation of Chapter 93A against her. Instead, plaintiff relies on general, sweeping allegations of conduct by both "defendants", but does not articulate any specific allegation that Ms. Cunningham actually did or failed to do anything. In her affidavit, and in her responses to

2

interrogatories, Ms. Cunningham states that she had no involvement in the alleged transaction between MSR and AuctioNet. Ms. Cunningham never communicated with Mr. Epstein or MSR, at any time, regarding the alleged transaction. The lack of any evidence in the record regarding Ms. Cunningham's involvement in the alleged transaction not only precludes entry of summary judgment in favor of MSR, but warrants grant of summary judgment in favor of Ms. Cunningham on the claim for violation of Chapter 93A.

In the first Epstein Affidavit, plaintiff does not allege that Ms. Cunningham said or did anything with respect to the alleged transaction at issue in this litigation. Now, in an attempt to lump Ms. Cunningham into the allegations against AuctioNet or Mr. Otus, in the Second Epstein Affidavit, plaintiff alleges in several instances that "defendants" did or failed to do something without specifying which individual defendant committed the act or omission. By doing so, MSR attempts to suggest that Ms. Cunningham played a role in this transaction where the record otherwise makes it clear that she played no role whatsoever. See Second Epstein Affidavit, ¶¶ 4, 10, 11, 16, 21, 26 These broad, illusory allegations are meant to imply that Ms. Cunningham took certain actions or made statements, which, as made clear by the first Epstein Affidavit, she did not.

The Court could determine that a factual issue exists regarding Ms. Cunningham's involvement based solely on the two versions of the Epstein Affidavit. Even more persuasive, however, is the affidavit testimony of Ms. Cunningham who states that she never had any communications with plaintiff until she received a demand letter from MSR dated April 6, 2004. Plaintiff fails to cite any emails or other correspondence between MSR, or Mr. Epstein and Ms. Cunningham. Similarly, plaintiff does not identify a single statement made by Ms. Cunningham to anyone, at any time, regarding this transaction.

MSR relies on Ms. Cunningham's purported signatures on a series of checks to support allegations of her involvement in AuctioNet transactions. In her affidavit, however, Ms. Cunningham states that although she may have co-signed a limited number of checks in unrelated transactions, those checks represent payments to clients who had hired AuctioNet to conduct auctions on their behalf. None of the checks relied upon by plaintiff are related in any way to the alleged transaction between MSR and AuctioNet. Co-signatures on checks are routinely used in such transactions to ensure security, however, Ms. Cunningham was not involved in the process of buying and selling assets. These facts fall far short of what is required to hold an officer directly liable for corporate debt.

In Rhone v. Energy North, Inc., 790 F. Supp. 353 (D. Mass. 191), this Court confirmed that "merely identifying a defendant as an "officer" does not adequately allege his involvement in the torts of the corporation." Id. at 363.  The record in this case does not support a finding that Ms. Cunningham engaged in knowing and willful conduct sufficient to sustain a violation of Mass. G.L. c. 93A.  In Rhone, the complaint did not allege any specific facts to support its allegations that the individual officers of the defendant corporation had engaged in unfair and deceptive trade practices.  Rhone, 790 F. Supp. at 362.  Similarly, here, MSR relies upon the scant allegation that Ms. Cunningham "held herself out" as an officer of AuctioNet, and nothing more.  The record, even with the new general, but vague, allegations contained in the Second Epstein Affidavit does not support a grant of summary judgment on the claim for violation of Chapter 93A against Ms. Cunningham.

As in Rhone and Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902 (1st Cir. 1980), there is no evidence that Ms. Cunningham was personally involved in the AuctioNet's tortious conduct.  Her affidavit states that she had no involvement in the transaction between MSR and AuctioNet, and nothing in the record demonstrates otherwise.  Ms. Cunningham cannot incur personal liability for a tort committed by the corporation or by one of its other officers merely by virtue of the

5

office which she holds in the corporation.  <u>Refrigeration Discount Corp. v. Catino</u>, 330 Mass. 230 (1953).  As in <u>Refrigeration Discount</u>, this Court must find that, as to third persons, a corporate officer such as Ms. Cunningham cannot be held liable where there is no evidence in the record that she committed a breach of duty owed to MSR.  <u>Id</u>.  As a result, summary judgment in favor of plaintiff should be denied, and should be granted in favor of Ms. Cunningham on the claim for violation of Chapter 93A.

          b.    <u>Count I (Conversion)</u>

MSR alleges that Ms. Cunningham converted the funds to her own personal use, but proffers no evidence to support the allegation.  In fact, all record evidence is to the contrary.  Ms. Cunningham specifically states in her affidavit that she never had any access to MSR's funds, never converted them to her own personal use, and never personally benefited from those funds.

The wiring instructions provided by Mr. Otus to Mr. Epstein in an email, show that AuctioNet directed MSR to wire the funds to a corporate account in the name of Realm Connect Corporation, d/b/a AuctioNet ("AuctioNet Account"), and plaintiff states that it in fact did so.  Epstein Affidavit, Exhibit 7.  MSR does not cite any evidence in the record that it sent funds to any personal account controlled by Ms.

6

Cunningham individually.  Thus, summary judgment *in favor of Ms. Cunningham* is appropriate on this count.

Moreover, MSR fails to offer any evidence that Ms. Cunningham intentionally and wrongfully exercised acts of ownership, control or dominion over MSR's funds.  See Schmid v. Nat'l Bank of Greece, 622 F. Supp. 704 (D.Mass 1985); Chicago Title Insurance Company v. DeWire, 1993 WL 818887 (Mass Super., Sept. 28, 1993).  MSR concedes that it wired funds to the account specified in the email attached to the Epstein Affidavit as Exhibit 7.  The affidavits of Ms. Cunningham and Mr. Otus both state that the account to which MSR's funds were wired was held in the name of "Realm Connect Corporation, d/b/a AuctioNet.com."

At no time did Ms. Cunningham have any personal access to nor did she ever benefit from those funds.  The Otus affidavit states that all funds held in the AuctioNet Account were used to satisfy legitimate corporate debt of AuctioNet.  Thus, it is clear that plaintiff cannot prevail on summary judgment on the conversion claim against Ms. Cunningham.  Rather the record supports a grant of summary judgment in favor of Ms. Cunningham on the conversion claim.

As in Johnson Matthey, Inc. v. Harotunian, 1990 WL 167473 (D. Mass 1990), this Court should deny plaintiff's conversion claim against an individual defendant where a wife, here Ms. Cunningham, denies having any part in her husband's activities, or those of AuctioNet.  Johnson

7

Matthey, 1990 WL 167473.  In Johnson Matthey, the Court held that summary judgment was not appropriate because "there are genuine issues as to a material fact with respect to the conversion claim against [the individual defendant], i.e. whether she actually exercised dominion over the [money] in question."  Id., citing Row v. Home Sav. Bank, 306 Mass. 522, 525-26 (1940)(lack of dominion a defense to conversion action). See also Premium Cut Beef Co. v. Karp, 318 Mass. 229, 61 N.E.2d 112 (1945) (plaintiff in conversion action who relies upon demand and refusal must show that at time of demand, defendant had control over property in question).

In order for the plaintiff to prevail upon a conversion claim, evidenced by a demand and refusal as asserted by MSR in this matter, the plaintiff must show that at the time of such demand and alleged refusal the defendant had control of the articles so as to be able to comply with the demand.  De Young v. Frank A. Andrews Co., 214 Mass. 47, 48, 100 N.E. 1080; Hellier v. Achorn, 255 Mass. 273, 284, 285, 151 N.E. 305, 45 A.L.R. 788; Magaw v. Beals, 272 Mass. 334, 350, **113 172 N.E. 347; Edinburg v. Allen-Squire Co., 299 Mass. 206, 212, 12 N.E.2d 718. See Johnson v. Couillard, 4 Allen 446; Gilmore v. Newton, 9 Allen 171, 172, 85 Am.Dec. 749.  In this case, MSR has not proffered any evidence that Ms. Cunningham had any control over MSR's money at the time of its demand and therefore summary judgment in favor of MSR must be denied.

8

In order for the plaintiff to prevail upon a conversion claim, evidenced by a demand and refusal, the plaintiff must show that at the time of such demand and alleged refusal the defendant had control of the articles so as to be able to comply with the demand. There is no evidence that Ms. Cunningham ever had control over MSR's funds, and therefore summary judgment in favor of Ms. Cunningham is appropriate on this claim.

### III. Factual Issues Preclude Grant of Summary Judgment Against Nuri Otus.

#### a. Count I (Conversion)

In order to prevail on a conversion claim, plaintiff must establish that the defendant intentionally and wrongfully exercised acts of ownership, control or dominion over plaintiff's personal property to which plaintiff had an immediate right of possession. See Schmid, 622 F. Supp. at 704; Chicago Title Insurance, 1993 WL 818887.

Plaintiff proffers no evidence that Mr. Otus ever exercised any ownership, control or dominion over MSR's funds. MSR concedes that it wired funds to the AuctioNet Account specified in the email attached to the Epstein Affidavit as Exhibit 7. In his affidavit, Mr. Otus states that AuctioNet requested that MSR wired the funds to the AuctioNet Account, and in the Epstein Affidavit, plaintiff states that it in fact did so. At no time did Mr. Otus have any personal access to those funds, and in his affidavit, Mr. Otus states that all funds held in the

9

AuctioNet Account were used to satisfy legitimate corporate debt of Realm Connect Corp., d/b/a AuctioNet, and were not utilized by the individual defendants. Otus Aff., ¶ 17. The record demonstrates that there is a factual dispute regarding whether Mr. Otus ever had control over MSR's funds.

Here, as in <u>Johnson Matthey</u>, the Court should deny summary judgment because "there are genuine issues as to a material fact with respect to the conversion claim." <u>Johnson Matthey</u>, 1990 WL 167473, surpa at *1. As with the claim against Ms. Cunningham, MSR has not pointed to any evidence in the record that Mr. Otus had any control over MSR's money at the time of its demand and therefore summary judgment in favor of MSR must be denied.

In addition, in order to prevail on its claim for conversion, MSR must show that it was entitled to immediate possession of the personal property allegedly converted by the defendant. In <u>Schmid v. Nat'l Bank of Greece</u>, <u>supra</u>, the Court granted defendant's motion for summary judgment on plaintiff's conversion claim because there was no evidence that plaintiff had any right to immediate possession of funds deposited in a bank account pursuant to an agreement between the parties. <u>Schmid</u>, 622 F. Supp. at 713. The Court found that the defendant did not put the monies withdrawn from the bank account to his own use, but rather put them in an account where they were used for legitimate business

10

purposes. Id. Similarly, here, MSR wired its funds to AuctioNet's corporate account where they were utilized to pay corporate debt as set forth in the Otus Affidavit (¶ 17). At the time MSR demanded return of its funds, they were no longer in the AuctioNet's Account. However, Mr. Otus specifically denies that he used MSR's funds for his own personal benefit and therefore summary judgment is not appropriate.

        b.   Count VI (Chapter 93A violation)

1.   Mr. Otus is Not Liable for the Debt of AuctioNet.

This case turns on the alleged agreement between MSR and AuctioNet in November 2003. Epstein Affidavit, Exhibits 2, 4 and 8; Otus Affidavit, ¶ 11. All of the email communications which plaintiff contends establish the contractual relationship are from Mr. Otus in his explicit capacity as CEO of AuctioNet. Otus Aff., ¶ 11. Therefore there is, at minimum, a question of fact regarding whether MSR contracted with Mr. Otus in his individual capacity, or as an officer of AuctioNet.

Moreover, the wiring instructions provided to MSR for the funds in the transaction directed MSR to send payment to AuctioNet's corporate account. The account identified in the wiring instructions, (Epstein Aff., Exhibit 7) was held at Cupertino National Bank in the name of "Realm Connect Corporation, d/b/a AuctioNet." At no time did Mr. Otus exercise any personal control over the funds in that bank account.

11

From the designation on each of Mr. Otus's emails to plaintiff, and from the corporate information contained in the wiring instructions, it should have been clear to plaintiff that it was contracting with a corporate entity, and not an individual. <u>See</u>, <u>e.g.</u>, <u>Bissonnette v. Keyes</u>, 319 Mass. 134, 136 (1946); <u>William Gilligan Co. v. Casey</u>, 205 Mass. 26, 31 (1910); <u>Peterson v. Lehay</u>, 397 Mass. 689 (1986); <u>St. Thomas Realty Fund, Inc. v. Namou</u>, 1994 Mass. App. Div. 143, 1994 WL 440913 (1994). Under these circumstances, it is a factual question as to whether MSR contracted with an individual, or an entity.

There is no evidence that Mr. Otus personally entered into a contract with the plaintiff. The entity that contracted with plaintiff was a legally existing corporation operating under the laws of California at the time of the alleged agreement. The identity of that corporation was disclosed to the plaintiff, and plaintiff sent funds to a corporate account. There is no evidence that defendants co-mingled any funds belonging to the corporate debtor, or that they in any way profited from plaintiff's money.

IV.  <u>Alleged Admission By Counsel is Not Binding on Individual Defendants</u>.

The statement by counsel at oral argument on plaintiff's motion for temporary restraining order was not a binding admission on the parties. After plaintiff's presentation on the Motion, the Court demanded of defendants' counsel "Why don't you pay the man?" When

counsel attempted to articulate defendants' defenses, the Court consistently interrupted, interjecting "Then why don't you pay MSR?", "Why don't you pay them the money?", "Why don't they come up with the money?", "Never mind settle the matter. Why don't they come up with the money?", and, finally, "When are they going to come up with the money?"

It was in this context, and no other, that defendant's counsel attempted to present an explanation regarding the existence of the corporate debt owed by Realm Connect Corp., d/b/a AuctioNet. Counsel was never able to make a full presentation of the defendants' position due to the repeated interruptions of the Court demanding repayment of the funds.

The statement of counsel contained in the record and relied upon by plaintiff's counsel, is incomplete and does not accurately reflect defendants' position and the undersigned's argument on their behalf. Furthermore, the statement by counsel is not an admission in open court as suggested by plaintiff's counsel, and his reliance upon <u>Fraser and Wise, P.C. v. Primarily Primates, Inc.</u>, 966 F. Supp. 63, 75 (D. Mass 1996) is misplaced. In <u>Fraser</u>, counsel for the defendant entered into a <u>stipulation</u> in open court on behalf of his clients, and the court held the statements contained in the stipulation were admissible at summary judgment.

13

In this case, counsel did not enter into a stipulation, and had no intention of acknowledging his clients' individual liability for corporate debt.

## V. Conclusion

WHEREFORE, defendants Nuri Otus and Maureen Cunningham respectfully request that the Court deny plaintiff's Motion for Summary Judgment on Counts I and VI, and that summary judgment in favor of Ms. Cunningham be entered on those counts.

>Respectfully submitted,
>
>NURI OTUS AND MAUREEN CUNNINGHAM,
>By her attorneys,
>
>/s/ Michael C. Fee
>FEE, ROSSE & LANZ, P.C.
>Michael C. Fee (BBO #552796)
>Sabrina K. Lanz (BBO #567392)
>321 Boston Post Rd.
>Sudbury, MA 01776
>T: (978) 440-7000
>F: (978) 440-7650
>www.feelaw.com

Dated: December 21, 2005

### CERTIFICATE OF SERVICE

I, Michael C. Fee, hereby certify that a true copy of the foregoing document was served upon all counsel of record, by first class mail directed to Timothy J. Perry, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, 10 High Street, Fifth Floor, Boston, MA 02110 this 21st day of December 2005.

>/s/ Michael C. Fee