UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

Case # 1:04-CV-12300-EFH

|  |  |
|---|---|
| _____ | ) |
| MICRO SIGNAL RESEARCH, INC., | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| NURI OTUS and MAUREEN CUNNINGHAM, | ) |
|  | ) |
|     Defendants, | ) |
|  | ) |
| and | ) |
|  | ) |
| CUPERTINO NATIONAL BANK & TRUST, | ) |
|  | ) |
|     Trustee Defendant. | ) |
| _____ | ) |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Admitted.

2.    Defendants deny that Mr. Otus personally ran a website known as AuctioNet.  Defendants state that in or about July, 2001, a company previously known as AuctioNet.com, Inc. merged into Realm Connect Corporation ("Realm").  Affidavit of Nuri Otus ("Otus Affidavit") previously filed in support of Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order ¶ 5; Affidavit of Maureen Cunningham ("Cunningham Affidavit"), ¶ 5.  A true copy of the California Secretary of State's web portal information sheet for Realm is attached

to the Otus Affidavit as Exhibit 5.  Realm's business activities consisted of the creation and application of web-based technology, utilized by popular web sites such as AOL, to buy and sell products online.  Realm continued the activities of AuctioNet under its corporate umbrella.  Otus Aff., ¶ 5.  Mr. Otus and Ms. Cunningham, as of June 2001, owned one hundred percent (100%) of the Series A Preferred stock of Realm.  Otus Affidavit, ¶ 7; Cunningham Affidavit, ¶ 6.  There were also approximately fifty (50) Series B Preferred shareholders, the largest of which were Chong-Moon Lee and Global Virtual Accelerator, LLC.  Otus Affidavit, ¶ 7; Cunningham Affidavit, ¶ 6.  The total number of issued and outstanding shares in Realm as of June 30, 2001 exceeded 16,000,000, of which Mr. Otus and Ms. Cunningham held approximately 7,500,000 shares, or forty-four percent (44%).  Otus Affidavit, ¶ 7; Cunningham Affidavit, ¶ 6.  True copies of Realm's corporate records reflecting stock ownership in the company as of June 30, 2001 and March 5, 2002 are attached to the Otus Affidavit as Exhibit 6. Notwithstanding their equity interest in Realm, Mr. Otus and Ms. Cunningham did not exercise pervasive control over the affairs of the corporation.  Otus Affidavit, ¶ 8; Cunningham Affidavit, ¶ 7.  Rather these matters were managed by an active board of directors consisting of Nuri Otus, Sam Lee, and Chong-Moon Lee.  Otus Affdavit, ¶ 8; Cunningham Affidavit, ¶ 7. True copies of the agendas for several of Realm's board of director

meetings are attached to the Otus Affdavit as Exhibit 7.  Realm d/b/a AuctioNet consistently maintained corporate formalities, held frequent board meetings and strictly segregated corporate operations from the financial affairs of the shareholders.  Otus Affidavit, ¶ 9; Cunningham Affidavit, ¶ 8.

    3.    Ms. Cunningham admits that she is Mr. Otus's wife. Defendants deny that Ms. Cunningham participated in "running AuctioNet." Ms. Cunningham served only as Executive Vice-President of Business Development and Marketing, and was never involved with any transactions related to buying or selling assets.  Cunningham Affidavit,¶ 10; Maureen Cunningham's Responses to Plaintiff's First Set of Interrogatories ("Cunningham Answers to Interrogatories"), Response No. 1.

    4.    Defendants deny that either Mr. Otus or Ms. Cunningham represented anything to MSR or Mr. Epstein regarding the business of AuctioNet.  Otus Affidavit, ¶ 11; Cunningham Affidavit, ¶ 12. Defendants deny that prior to September 2003, MSR had purchased equipment from Real Connect Corporation, d/b/a AuctioNet, but state that on prior occasions, MSR may have purchased equipment from AuctioNet.com, Inc., an unrelated corporate entity.

    5.    Defendants deny that Mr. Otus made any representations other than those specifically set forth in emails between Mr. Otus, acting in his capacity as CEO of AuctioNet, and MSR or Mr. Epstein.  Defendants

cannot admit or deny what MSR "understood", but deny that AuctioNet was run as a "husband-wife team."  Otus Affidavit, ¶ 11; Cunningham Affidavit, ¶ 29.  Notwithstanding their equity interest in Realm, Mr. Otus and Ms. Cunningham did not exercise pervasive control over the affairs of the corporation.  Otus Affidavit, ¶ 8; Cunningham Affidavit, ¶ 7.  Rather these matters were managed by an active board of directors consisting of Nuri Otus, Sam Lee, and Chong-Moon Lee.  Otus Affidavit, ¶ 8; Cunningham Affidavit, ¶ 7.  Realm d/b/a AuctioNet consistently maintained corporate formalities, held frequent board meetings and strictly segregated corporate operations from the financial affairs of the shareholders.  Otus Affidavit, ¶ 9; Cunningham Affidavit, ¶ 8.  With respect to the third sentence of Paragraph 5, defendants contend that it was knowm, or should have been known by MSR, based on MSR's prior interactions with and purchases from AuctioNet.com, Inc., that it was contracting with a corporate entity in the transaction which is the subject of this litigation.  Otus Affidavit, ¶ 11.  Ms. Cunningham was not involved in any transactions with MSR, at any time, and had no communications with MSR, other than a letter from MSR to her dated April 6, 2004.  Therefore, Ms. Cunningham could not have "identified any corporate entity to plaintiff."  Cunningham Affidavit, ¶¶ 11 and 12; Cunningham Answers to Interrogatories, Response No. 3.

4

6.    Plaintiff has misstated the facts contained in the Otus Affidavit.  Defendants have always maintained that there was a corporate entity known as AuctioNet.com, Inc.  Otus. Affidavit, ¶¶ 1-6.  The documents attached to the Otus Affidavit demonstrate that all corporate formalities were followed, and this information was not withheld from MSR during the alleged transaction.  In fact, the documents were available from the California Secretary of State website.  Otus. Affidavit ¶ 6, Exhibit 5.  Defendants did not own 100% of the Preferred Stock of Realm Connect Corp., d/b/a AuctioNet.  Otus Affidavit, Exhibit 6.

7.    Defendants deny the allegation contained in Paragraph 7. Mr. Otus, acting on behalf of Realm d/b/a AuctioNet, and not in his individual capacity, proposed a joint business venture, in which certain equipment would be purchased and sold by MSR and Realm d/b/a AuctioNet. Defendants did not propose any venture in which they participated as individuals.  Otus Affidavit, ¶ 11, Cunningham Affidavit, ¶¶ 11 and 12. All emails between MSR and Mr. Otus, which are attached to the Affidavit of Daniel Epstein ("Epstein Affidavit"), were sent by Mr. Otus _explicitly in his capacity as CEO of AuctioNet_.  Otus Affidavit ¶ 11.

8.    Defendants admit the first sentence of paragraph 8. Defendants deny Mr. Otus made any representations, in an individual capacity, to MSR or Mr. Epstein regarding the location of any equipment.

Defendants deny that Ms. Cunningham communicated with MSR or Mr. Epstein, at any time, regarding any aspect of the alleged transaction between MSR and AuctioNet.  Otus Affidavit, ¶ 11; Cunningham Affidavit, ¶ 12.

9.    Defendants deny the allegations contained in paragraph 9 to the extent the emails referred to therein reflected any "deal between the parties."  The emails attached to the Epstein Affidavit reflect a deal between MSR and AuctioNet, not a deal between MSR and the individual defendants.  Otus Affidavit ¶ 11; Cunningham Affidavit, ¶¶ 11 and 12.

10.    Defendants state that Mr. Otus, acting as CEO of AuctioNet, provided a list of equipment to MSR.  Defendants deny that Mr. Otus, acting in an individual capacity, provided any information to Mr. Epstein or MSR.  Defendants deny that Ms. Cunningham provided any information to Mr. Epstein or MSR at any time.  Otus Affidavit, ¶ 11; Cunningham Affidavit, ¶ 12.

11.    Defendants admit that in a November 9, 2003 email from Mr. Otus as CEO of AuctioNet to Mr. Epstein, AuctioNet directed Mr. Epstein to wire funds to an account at Cupertino National Bank.  This account was held in the name of Realm Connect Corporation d/b/a AuctioNet.com. Otus Affidavit, ¶ 12; Epstein Affidavit, Exhibit 4.  Defendants deny that Ms. Cunningham had any knowledge of, or involvement in, the

communication of wiring instructions to MSR or Mr. Epstein.  Cunningham
Affidavit, ¶¶ 12, 13 and 32.

    12.    Defendants deny the allegations contained in paragraph 12.
Defendants state that it was explicitly stated in the wiring
instructions that the funds were directed to a corporate account held in
the name of "Realm Connect Corporation d/b/a AuctioNet.com."  Otus
Affidavit, ¶ 12; Epstein Affidavit, Exhibit 4; Cunningham Affidavit, ¶
14.  Defendants deny that there was any reason for Ms. Cunningham to
mention any corporate entity to Mr. Epstein or MSR because she had no
communications with MSR or Mr. Epstein regarding the transaction.
Cunningham Affidavit, ¶ 12.

    13.    Defendants state that the content of the email speaks for
itself.

    14.    Defendants admit that on November 12, 2003, MSR wired
$210,000.00 to an account held in the name of Realm Connect Corp. d/b/a
AuctioNet.com.

    15.    Defendants state that the content of the email speaks for
itself.

    16.    Defendants deny that the individual defendants represented
anything to MSR with respect to an agreement to buy or sell the
contemplated equipment.  Otus Affidavit, ¶ 11; Cunningham Affidavit, ¶¶
12 and 33.  Mr. Otus communicated with MSR only in his capacity as CEO

of AuctioNet.  Otus Affidavit, ¶ 11.   Ms. Cunningham had no

communications with MSR or Mr. Epstein at any time regarding the alleged

transaction.   Cunningham Affidavit, ¶¶ 12 and 33.  The Epstein

Affidavit does not allege that Ms. Cunningham represented anything to

MSR, only that Mr. Otus, who, as indicated on all communications, was

acting in his capacity as CEO on behalf of AuctioNet.  Epstein

Affidavit, ¶ 15.  Mr. Otus denies that he ever represented to MSR, or

Mr. Epstein, that an agreement to buy the contemplated equipment had

been secured and that MSR's cash was held in escrow in order to

facilitate that purchase.  Supplemental Affidavit of Nuri Otus ("Otus

Supp. Affidavit"), ¶ 1.

18. Defendants deny the characterization of "despite these

representations" because Mr. Otus never made any representations to Mr.

Epstein or MSR in his individual capacity.  Defendants deny that Ms.

Cunningham ever made any representations, in ancy capacity, to Mr.

Epstein or MSR, and note that the Epstein Affidavit does not allege that

Ms. Cunningham represented anything to MSR.  Otus Affidavit, ¶ 11;

Cunningham Affidavit, ¶ 12.  Mr. Otus and Ms. Cunningham admit that they

did not personally purchase any equipment.

18. Defendants deny that either of them had any personal

obligation to return MSR's money.  Otus Affidavit, ¶ 17; Cunningham

Affidavit, ¶¶ 15-17.  Defendants deny that MSR ever made demand upon

Ms. Cunningham for any accounting or return of its money.  Cunningham Affidavit, ¶¶ 21-23, 34.

19.   Mr. Otus denies that MSR requested a return of $210,000.00 on or about December 21, 2003.  Otus Supp. Affidavit, ¶ 2.  Ms. Cunningham lacks any knowledge regarding the allegations conteined in paragraph 19.  Defendants deny that MSR requested that they personally return MSR's money, and further state that the funds which had been deposited in AuctioNet's corporate account had been utilized to satisfy corporate debt and were no longer available to return to MSR.  Otus Affidavit, ¶ 17; Cunningham Affidavit, ¶¶ 21-23.  Defendants specifically deny that MSR at any time made any demand upon Ms. Cunningham that she return MSR's funds.  Cunningham Affidavit, ¶¶ 23 and 34.

20.   Defendants state that the content of the email speaks for itself, but deny that it is "requesting the wire transfer."  Otus Supp. Affidavit, ¶ 3; Epstein Affidavit, Exhibit 8.

21.   Mr. Otsu denies that any of his communications with MSR or Mr. Epstein were either "excuses for failure to return MSR's money," or "misrepresentations."  Ms. Cunningham denies that she had any communication with MSR or Mr. Epstein at any time.  Otus Affidavit, ¶ 11; Cunningham Affidavit, ¶ 12, 35.

22.    Defendants neither admit nor deny that MSR scheduled a trip in January 2004, but deny that equipment was "supposed to be held in Pleasanton, California."  Otus Affidavit, ¶ 17; Cunningham Affidavit, ¶ 36.  Ms. Cunningham denies that she ever communicated to MSR or Mr. Epstein at any time.  Cunningham Affidavit, ¶¶ 12, 30-32.

23.    Mr. Otus states that the content of the email speaks for itself, but denies that the contents of the email are accurate.  Ms. Cunningham lacks any personal knowledge of the allegations contained in paragraph 23.

24.    Defendants state that the content of the email speaks for itself.

25.    Defendants cannot admit or deny what MSR believed or what actions MSR took based upon those beliefs.

26.    Mr. Otus denies that he had any communications, in his personal capacity with MSR or Mr. Epstein, regarding this transaction. Otus Affidavit, ¶ 11; Cunningham Affidavit, ¶ 12.  Ms. Cunningham specifically denies that she ever had any communications with MSR or Mr. Epstein at any time.  Cunningham Affidavit, ¶ 36.

27.    Defendants state that the content of the email speaks for itself.

28.    Defendants cannot admit or deny what MSR believed or what actions MSR took based upon those beliefs.  Defendants cannot admit or

deny the content of conversations with third persons to which they were not party.  Defendants state that there is no independent support in the record for these allegations.

29.    Defendants were not a party to the alleged conversations between Mr. Epstein and Mr. Greenseid and therefore cannot admit or deny the allegations in the first sentence of Paragraph 29.  Defendants deny that Mr. Otus ever called Mr. Epstein to apologize or state that he had meant to advise MSR that he never picked up the equipment.  Defendants deny that Mr. Otus ever told Mr. Epstein that the money would be returned, or that he could borrow it from his mother.  Defendants deny that Mr. Otus requested that MSR not go to the authorities.  Otus Supp. Affidavit, ¶ 4.

30.    Defendants admit that they received a letter dated April 6, 2004 but deny the allegations contained in that letter.  Otus Affidavit, ¶¶ 11, 12; Cunningham Affidavit, ¶ 30.

31.    Defendants deny that they acknowledged any personal responsibility for AuctioNet's corporate debt owed to MSR or Mr. Epstein.  Otus Affidavit, ¶¶ 11, 12, 17; Cunningham Affidavit, ¶ 38. Defendants deny that they ever authorized David Greenseid to acknowledge their personal liability for AuctioNet's corporate debt, and also deny that any communications from Attorney Greenseid constitute any personal

acknowledgement of AuctioNet's corporate debt.  Otus Supp. Affidavit, ¶ 5.

32.   Defendants have always maintained that any obligation to MSR is a corporate debt owed by AuctioNet.  Otus Affidavit, 17.  Ms. Cunningham has never spoken to Mr. Epstein or MSR and therefore had no reason or opportunity to acknowledge any debt, and in any event denies personal obligation to pay Mr. Epstein or MSR.  Cunningham Affidavit, ¶¶ 12, 30 and 34.

33.   Defendants state that the content of the letter speaks for itself.

34.   Defendants cannot either admit or deny actions that MSR took when they were not present.

35.   Defendants state that the content of the letter speaks for itself, but deny that they ever authorized Attorney Greenseid to acknowledge their personal liability for AuctioNet's debt, or that any communications from Attorney Greenseid constitute acknowledgement of personal liability for AuctioNet's debt.  Otus Supp. Affidavit, ¶ 5.

36.   Defendants cannot admit or deny this general allegation, which contains no specific detail regarding the date and time of the alleged conversations.  Defendants deny any personal obligation to repay the debt, and deny that they ever authorized Attorney Greenseid to acknowledge their personal liability for AuctioNet's debt.  Defendants

deny that any communications from Attorney Greenseid constitute acknowledgement of personal liability for AuctioNet's debt.  Otus Supp. Affidavit, ¶ 5.

37.   Defendants state that the content of the letter speaks for itself, but deny that they ever authorized Attorney Greenseid to acknowledge their personal liability for AuctioNet's debt.  Defendants deny that any communications from Attorney Greenseid constitute acknowledgement of personal liability for AAuctioNet's debt.  Otus Supp. Affidavit, ¶ 5.

38.   Defendants state that the content of the letter, and any attachment to it, speak for themselves.  Defendants deny that they ever authorized Attorney Greenseid to acknowledge their personal liability for AuctioNet's debt.  Defendants deny that any communications from Attorney Greenseid constitute acknowledgement of personal liability for AuctioNet's debt.  Otus Supp. Affidavit, ¶ 5.

39.   Defendants cannot admit or deny MSR's state of mind, or the impact that it had on MSR's decision whether or not to take certain actions.

40.   Defendants deny that they had any personal liability for the corporate debt to MSR, and specifically deny that Ms. Cunningham ever had any communications with MSR or Mr. Epstein.  Otus Affidavit, ¶ 17; Cunningham Affidavit, ¶ 12.

41.    Defendants state that the content of the letter speaks for itself, but deny that they ever authorized Attorney Greenseid to acknowledge their personal liability for AuctioNet's debt.  Defendants deny that any communications from Attorney Greenseid constitute acknowledgement of personal liability for AuctioNet's debt.  Otus Supp. Affidavit, ¶ 5.

42.    Defendants cannot admit or deny whether a third party took or failed to take certain actions when the defendants were not present.

43.    Defendants state that the content of the letter speaks for itself, but deny that they ever authorized Attorney Greenseid to acknowledge their personal liability for AuctioNet's debt.  Defendants deny that any communications from Attorney Greenseid constitute acknowledgement of personal liability for AuctioNet's debt.  Otus Supp. Affidavit, ¶ 5.

44.    Defendants state that the content of the letter speaks for itself, but deny that they ever authorized Attorney Greenseid to acknowledge their personal liability for AuctioNet's debt.  Defendants deny that any communications from Attorney Greenseid constitute acknowledgement of personal liability for AuctioNet's debt.  Otus Supp. Affidavit, ¶ 5.

45.    Defendants cannot admit or deny whether a third party took or failed to take certain actions when the defendants were not present.

46.   Defendants state that the content of the letter speaks for itself, but deny that they ever authorized Attorney Greenseid to acknowledge their personal liability for AuctioNet's debt.  Defendants deny that any communications from Attorney Greenseid constitute acknowledgement of personal liability for AuctioNet's debt.  Otus Supp. Affidavit, ¶ 5.

47.   Defendants state that the letter referenced in Paragraph 47 speaks for itself.  Defendants cannot admit or deny the second sentence because it is a legal conclusion and not a factual allegation. Defendants deny that they ever authorized Attorney Greenseid to acknowledge their personal liability for AuctioNet's debt.  Defendants deny that any communications from Attorney Greenseid constitute acknowledgement of personal liability for AuctioNet's debt.  Otus Supp. Affidavit, ¶ 5.

48.   Defendants deny that Mr. Otus was conducting auctions under a new name, but rather, state that in or about July, 2004, Mr. Otus became employed as an independent contractor by Asset Management Associates Group, Ltd.  Otus Affidavit, ¶ 13.

49.   Defendants deny that they personally had an advertisement on "Craig's List."  Otus Affidavit, ¶ 13; Cunningham Affidavit, ¶ 41.

50.   Defendants admit the first sentence.  Defendants deny the second sentence and state that at the hearing on plaintiff's Motion for

preliminary injunction, counsel for defendants was not allowed to fully articulate defendants' defenses as the Court refused to entertain any explanation regarding the lack of personal liability for corporate debt. Affidavit of Michael C. Fee ("Fee Affidavit"), ¶¶ 7, 8.

51.    Defendants deny that this statement fairly characterizes counsel's argument.  This statement is the opening sentence from the argument counsel intended to make but was not allowed to by the Court. Counsel's full presentation would have included defenses to plaintiff's claims that the individual defendants are personally liable for a corporate debt.  Fee Affidavit, ¶¶ 5-8.

52.    Defendants deny this statement and state that Ms. Cunningham has not made any misrepresentations under oath.  Cunningham Affidavit, ¶ 41.

53.    Mr. Otus admits that he has recently engaged bankruptcy counsel but has not yet filed for protection under any Chapter of the United States Bankruptcy Code.  In addition, Mr. Otus states that he has recently resolved two matters in California, but denies that the facts or circumstances were similar to those raised by MSR, and in any event that such actions are not material to determination of summary judgment in this case.  Otus Supp. Affidavit, ¶ 7.  Further, defendants state that in the context of settlement discussions, defendants' counsel has discussed with plaintiff's counsel the various methods by which MSR's

16

claims would be treated both in a bankruptcy and outside of a bankruptcy proceeding.  Fee Affidavit, ¶ 9.

54.  Admitted.

Defendants' Local Rule 56.1 Statement of Undisputed Material Facts

1.  AuctioNet.com, Inc. ("AuctioNet") was incorporated in California in August, 1999.  Otus Affidavit, ¶ 1; Cunningham Affidavit, ¶ 1.

2.  AuctioNet's Articles of Incorporation were amended and restated on July 20, 2000 in connection with the company's efforts to obtain financing.  Otus Affidavit, ¶ 2; Cunningham Affidavit, ¶ 2.

3.  While Mr. Otus and Ms. Cunningham were shareholders of AuctioNet, they did not exercise pervasive control over the affairs of the company.  Otus Affidavit, ¶ 4; Cunningham Affidavit, ¶ 4.

4.  Corporate activities were overseen and managed by an active board of directors.  Otus Aff., ¶¶ 1 - 4; Cunningham Affidavit, ¶ 4.

5.  AuctioNet built and maintained a business to consumer website, similar to E-bay, that specialized in the sale and resale of high technology equipment.  Otus Affidavit, ¶ 5; Cunningham Affidavit.

6.  In or about July, 2001, AuctioNet merged into Realm Connect Corporation ("Realm").  Otus Affidavit, ¶ 5; Cunningham Affidavit, ¶ 6.

7.  Realm's business activities focused on the creation and application of web-based technology, utilized by popular web sites such

17

as AOL, to buy and sell products online.  Otus Affidavit, ¶ 6;
Cunningham Affidavit, ¶ 5.

8.    After the merger, Realm continued the activities of
AuctioNet under its corporate umbrella.  Otus Aff., ¶¶ 5 - 6; Cunningham
Affidavit, ¶ 5.

9.    The total number of issued and outstanding shares of Realm,
as of June 30, 2001, exceeded 16,000,000, of which Mr. Otus and Ms.
Cunningham together held 7,500,000, or approximately forty-four percent
(44%).  Otus Affidavit, ¶ 7; Cunningham Affidavit, ¶ 6.

10.    Notwithstanding their significant equity interest, Mr. Otus
and Ms. Cunningham did not exercise pervasive control over the affairs
of Realm which, again, were overseen and managed by an active board of
directors.  Otus Aff., ¶¶ 7-8; Cunningham Affidavit, ¶ 7.

11.    Realm, d/b/a/ AuctioNet consistently maintained corporate
formalities, held frequent board meetings, and strictly segregated
corporate operations from the financial affairs of the shareholders.
Otus Affidavit, ¶ 9; Cunningham Affidavit, ¶ 8.

12.    In or about July, 2004, having failed to successfully market
its products and services for several quarters, and having failed to
attract sufficient equity investment to continue operations, Realm
ceased to do business.  Otus Aff., ¶¶ 9 - 10; Cunningham Affidavit, ¶ 9.

13.   The alleged agreement at issue in this case was not between plaintiff and Mr. Otus or Ms. Cunningham, but rather with Realm, d/b/a AuctioNet.  Otus Affidavit, ¶ 11; Cunningham Affidavit, ¶ 11.

14.   All of the email communications which plaintiff contends establish the contractual relationship are from Mr. Otus <u>in his explicit capacity as CEO of AuctioNet</u>.  Otus Affidavit, ¶ 11; Epstein Affidavit, Exhibits 2 - 5.

15.   Cupertino National Bank & Trust, the bank to which plaintiff alleges it wire transferred funds in connection with the transaction, maintained the account in the name of "Realm Connect Corporation d/b/a AuctioNet.com."  Otus Aff., ¶¶ 11 - 12; Cunningham Affidavit, ¶ 14.

16.   Plaintiff knew, or reasonably should have known throughout the transaction, that it was dealing with a corporate entity, not an individual. Otus Affidavit, ¶¶ 11, 12; Cunningham Affidavit, ¶¶ 11, 12, 13.

17.   MSR's alleged agreement was with AuctioNet, not its shareholders.  Otus Affidavit, ¶¶ 11, 12.

18.   MSR wired the funds it now seeks to recover into to the corporate account of AuctioNet, and not that of Mr. Otus and Ms. Cunningham.  Otus Affidavit, ¶ 12; Cunningham Affidavit, ¶¶ 11-17; Epstein Affidavit, Exhibit 7.

19.    MSR neither alleges that it provided funds directly to the individual defendants, nor describes how Mr. Otus or Ms. Cunningham benefited personally from the failed transaction, a contention which Mr. Otus and Ms. Cunningham specifically deny.  Otus Affidavit, ¶¶ 12, 17; Cunningham Affidavit, ¶¶ 13-17.

20.    MSR seeks to hold a company's chief executive, and his wife, personally liable on a corporate obligation.


                              Respectfully submitted,

                              NURI OTUS AND MAUREEN CUNNINGHAM,
                              By her attorneys,

                              /s/ Michael C. Fee
                              FEE, ROSSE & LANZ, P.C.
                              Michael C. Fee (BBO #552796)
                              Sabrina K. Lanz (BBO #567392)
                              321 Boston Post Rd.
                              Sudbury, MA 01776
                              T:  (978) 440-7000
                              F:  (978) 440-7650
                              www.feelaw.com

Dated:  December 21, 2005

<u>CERTIFICATE OF SERVICE</u>

I, Michael C. Fee, hereby certify that a true copy of the foregoing document was served upon all counsel of record, by first class mail directed to Timothy J. Perry, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, 10 High Street, Fifth Floor, Boston, MA 02110 this 21st day of December, 2005.


/s/ Michael C. Fee